MIRA BEALS *vs.* AUGUSTIN THOMPSON & others.

Suffolk.    March 6, 7, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Libel — Privileged Communication — Evidence — Malice.*

A letter written by a creditor to his debtor's husband, a rich man, informing him of her bad conduct before their marriage, for the purpose of compelling him or her to pay an antenuptial debt, which after her marriage she refused to pay under circumstances showing ingratitude on her part, is not a privileged communication.

In an action for libel brought by such debtor against her creditor, the latter admitted writing and sending the letter, and set up in defence the truth of its subject matter.    At the trial, letters of the same general tenor as the letter in question, written by the creditor to her after her marriage, were admitted as showing malice, while they also tended to contradict his testimony; and a letter written by him to her before the marriage, which also tended to show malice, was admitted as contradicting his testimony.    *Held*, that these letters were properly admitted in evidence.

TORT.    The declaration alleged in substance, that, while the plaintiff was living happily with her husband, James H. Beals, a man of wealth and social position, the defendant maliciously wrote and sent to him three letters, "among other things charging the plaintiff, in substance, with having obtained money and other property from the defendant by false pretences; with having been guilty of dishonorable conduct, deception, ingratitude, falsehood, and dishonesty toward and with the defendant; with having insulted and betrayed the defendant's confidence; with having treated him meanly in return for his alleged friendship for the plaintiff; with having repudiated certain pretended debts

due from the plaintiff to the defendant; with having a violent, fitful, obstinate, and ugly temper, and with being partially insane, an adventuress and swindler"; that such charges were false and were known to the defendant to be such, but that the plaintiff's husband believed them to be true, and withdrew his confidence from the plaintiff, alienated his affections from her, was guilty of cruel and abusive treatment of her, separated from her and refused to live or cohabit with her; and that of such three letters the only one in the plaintiff's possession was annexed to the declaration. The declaration concluded as follows: " And the plaintiff says, that, by reason of the matters and things hereinbefore set forth and alleged, she has suffered great pain and distress of body and mind; has lost her home and the comfort and society of her said husband, and her domestic peace and happiness have been destroyed; that she has been, and is now, subject to the contempt, ridicule, and reproach of her friends and acquaintances, by reason whereof she has sustained great damage and injury."

The letter annexed to the declaration was not dated, and recited that for several years after 1881 the defendant had lent to the plaintiff, and expended on her behalf, various sums of money for the purpose of educating her for the stage, and in supporting her while fitting her for that profession, in taking care of her when ill, and in sending her South for the benefit of her health; and contained among other things the following:

" Rumors came to me from Boston of her intended marriage to some one. . . . The object all around seemed to be to have the intended marriage concealed until it should transpire. I did not interfere, as I had no disposition to do so, after I learned that she would marry great wealth, as I saw a chance to recover my loans. I have sent Mira a bill of all she has borrowed, and of bills paid by her direction. I also sent a note covering the amount, saying that she could sign and return the note, and have time enough to pay gradually from her allowances from you. She replied with the most unreasonable, insulting letter a woman could write, refusing to pay a cent. This after she had written me over and over again of her intention to pay it when able. I have her private letters asking for the largest portion of the money, and acknowledging its date of receipt. I can prove

the account easy enough, but I do not wish to drag her private business and letters into a court of law, where the evidence and her letters would tend to show her an adventuress, swindler, and obtaining money under false pretences. . . . It would take very much provocation to make me do anything to injure her, but I shall have my debt. If she was poor I would never ask it. Under the circumstances, I can see but one way for me, i. e. to go to the courts, prove the account and agreements by her private letters in my possession, get an execution, and wait until she comes in possession of property that can be levied upon. Aside from the insulting violation of my rights in this matter, Mira, seemingly as an excuse for her treatment of me, has lately accused me to her friends of a dishonorable act, which I can disprove by her letters. I have written to her to undo the wrong, or I should communicate the matter to you. I shall certainly exact reparation. It will be better for her reputation in Boston to do right by me. . . . I do not ask you to pay her debts, but to use your influence to have her do right, and not provoke me to take measures that will scandalize her in Boston and Lowell. . . . I have drawn this as mildly as the circumstances will allow, for I do not want you to think I am threatening to obtain money. I have plenty, and an income of $9,000 a year. Mira has insulted and betrayed my confidence shamefully. . . .

" I must believe Mira is partially insane, for I believe from my heart she is one of the purest girls I ever knew. She is a gem of the first water when she is herself. Her brother here believes as I do, that she may be. I have loved Mira as if she was my own child, and I would strike down any man who would defame her. In this matter I can hardly believe the evidence of my own senses. I do not understand it. She talks rational enough. I have not presented her with a bill of two thirds I have paid out for her. . . . You may show her this if you wish. She has had nearly its counterpart within a few days. I asked her to show it to you. . . .

" The bill sent to Mira is only $2,882. She is entitled to $115 salary to come out. If I charged all I ought to, her bill ought to be at least $4,000. If she had not insulted my kindness and accused me of a dishonorable intention, I should not press things."

Writ dated December 29, 1887. The answer admitted that the defendant "wrote and sent to James H. Beals, the late husband of plaintiff, the letter or letters mentioned in plaintiff's declaration, but says that the same was or were written and sent lawfully, and was or were privileged, and that the same was or were true, and written and communicated without malice." Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered in evidence several letters which the defendant sent by mail to the plaintiff after her marriage, "some of which were received by her previous to her alleged separation from her husband, some before her husband received from defendant the letters mentioned in plaintiff's declaration, while others were received by her after her divorce from her husband." These letters, which were eleven in number, and with two exceptions were not dated, and which were of the same general tenor as the letter annexed to the declaration, among other things accused the plaintiff of bad conduct of various kinds, including an attempt on her part to seduce him, and in them the defendant spoke of her as his wife. The defendant objected to the admission of these letters in evidence, but the judge admitted them for the purpose of showing malice.

The plaintiff also offered in evidence another letter, which was written to her by the defendant before her marriage, and was of the same general tenor as the other letters sent by him to her. In this letter the defendant repeatedly called the plaintiff his "wife." The judge admitted this letter in the cross-examination of the defendant, and after he had testified that the plaintiff had been guilty of various kinds of misconduct, and had attempted to seduce him, and had denied that he had ever addressed her as his wife, or had solicited from her any intimate relations.

The defendant asked the judge to rule, and instruct the jury, that each of the letters mentioned in the plaintiff's declaration was a privileged communication, and that therefore the action could not be maintained; but the judge refused so to rule, and instructed the jury that no privilege was shown. No one of the letters there mentioned was produced at the trial, except the one which was annexed to the declaration.

The jury returned a verdict for the plaintiff in the sum of $30,000; and the defendant alleged exceptions.

*J. L. Hunt,* for the defendant.

*R. M. Morse, Jr.,* (*F. A. Dearborn* with him,) for the plaintiff.

FIELD, J. This is an action of tort, in which the defendant is charged with writing and sending to the husband of the plaintiff a letter containing a false and malicious libel concerning the plaintiff. The defendant in his answer admits that he wrote and sent the letter, and he says that the contents of it were true, and that it was written and sent without malice; he also says that it was a privileged communication.

Letters of the defendant to the plaintiff were put in evidence, against the objection of the defendant, " some of which," as recited in the bill of exceptions, " were received by her previous to her alleged separation from her husband, some before her husband received from defendant the letters mentioned in plaintiff's declaration, while others were received by her after her divorce from her husband." The letters sent to the plaintiff after her marriage were admitted by the court, for the purpose of showing malice on the part of the defendant. The letter which was sent to the plaintiff before her marriage was admitted during the cross-examination of the defendant, and after he had testified to certain things in regard to which this letter tended to contradict him. This letter contained evidence of malice. With two exceptions, the dates of the letters do not appear, but they all plainly relate to the same subject, and to many of the same circumstances, and they must have been written with the same general purpose. As the defendant set up the truth of the matter contained in the letter sent to the plaintiff's husband, evidence of actual malice was competent. Pub. Sts. c. 167, § 80. *Perry* v. *Porter,* 124 Mass. 338. *Lothrop* v. *Adams,* 133 Mass. 471. *Commonwealth* v. *Damon,* 136 Mass. 441.

We think that all of the letters sent to the plaintiff contain abundant evidence of malice on the part of the defendant, and that they are all so connected with the publication declared on as to be relevant upon the issue of malice. Some of them, including the letter sent to the plaintiff before her marriage, tended also to contradict the testimony of the defendant. They were all properly admitted in evidence.

The exceptions also state, that the court refused " to instruct the jury that each of the letters mentioned in plaintiff's declaration was a privileged communication, and that this action could not therefore be maintained," and " instructed the jury that no privilege was shown." No facts are recited in the bill of exceptions which tend to show that the occasion was privileged, except such as may be inferred from the relation of the parties to each other, and from the contents of the letters. Taking the case most favorably for the defendant, it is that the plaintiff owed a debt to the defendant for money lent to her before her marriage, which, after her marriage with a rich man, she refused to pay, under circumstances which showed ingratitude on her part, and that the defendant wrote a letter to the husband defamatory of the plaintiff, for the purpose of compelling him or her to pay the debt. This is not a lawful method of collecting a debt, or of compelling another person than the debtor to pay it. The defendant owed no duty to the husband to inform him of the bad conduct of his wife before her marriage, and the husband was under no obligation to pay the debts of his wife contracted before her marriage. There is no evidence that the defendant in sending the letter to the husband was acting in the discharge of any duty, social, moral, or legal. The ruling was right. *Gassett* v. *Gilbert*, 6 Gray, 94. *Krebs* v. *Oliver*, 12 Gray, 239. *Joannes* v. *Bennett*, 5 Allen, 169. *Shurtleff* v. *Parker*, 130 Mass. 293. *White* v. *Nicholls*, 3 How. 266.

*Exceptions overruled.*