## LOUIS O. MORASSE *vs.* G. ELZ BROCHU.

Worcester.    November 29, 1889. — June 20, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Slander — Pleading — Evidence of Malice — Variance.*

A declaration, in an action by a physician against a clergyman for slander uttered from the pulpit, averred, as special damage, that members of the church and others, whose names were omitted, thereafter ceased or refused to employ him, whereby he was deprived of professional income. A demurrer to the declaration did not refer to this omission, and the objection was first taken by a request for a ruling at the close of the evidence at the trial. *Held*, that the averment of special damage must, under the circumstances, be deemed sufficient.

False words uttered, with the intention of injuring a physician in the practice of his profession, though not defamatory, are actionable, when, as a natural and probable result, injury results therefrom.

A Roman Catholic priest told his congregation from the pulpit that a civil marriage by a physician, who was divorced from his first wife, excommunicated him from the church; that it should debar him from employment as a physician by the members of the parish, under penalty of loss of the ministrations and sacraments of the church in case of their illness; and that any one needing the

priest should not send for him when the physician was present, as he did not wish to be under the same roof. *Held,* that the words might properly be submitted to the jury as actionable *per se,* without an averment of special damage.

In an action of slander, evidence of special damage is admissible where an averment of special damage is necessary, or the words set out are actionable *per se.*

Evidence that a Roman Catholic priest, after an action for slander had been brought against him by a member of his parish, in referring to the action from the pulpit, said that he was not the party sued, but that everything fell upon the congregation, and that " we will see if the church shall destroy the vermin, or the vermin the church," is admissible in proof of malice.

If in an action of slander, taking the testimony of the various witnesses together, there is from some one or other of them evidence substantially in support of all the words set forth in the declaration, a ruling that the plaintiff cannot recover by reason of a variance is properly refused.

TORT for slander, by a physician against a Roman Catholic clergyman. Writ dated March 21, 1887. The declaration as amended was as follows:

" The plaintiff says that, before the speaking of the words herein alleged he was, hitherto had been, and still is a physician in regular practice in Southbridge, having the reasonable skill and qualification proper and necessary for the practice of that calling, business, and profession, and had always conducted himself therein with great diligence, industry, and propriety, and had acquired and was acquiring thereby great gain and profit from the practice of his said calling, business, and profession. He further says, he then was and still is living in lawful wedlock, having been lawfully married, that he then was and still is a person of culture and education, and a person of good moral character and a Christian man, and had always behaved himself with propriety, as a good citizen and a Christian, and was then and still is a person fit for social intercourse and association, professional relations, and practice among the members of the Notre Dame Roman Catholic Church in that place, and among all Christian people, and with defendant himself. Nevertheless, the plaintiff says the defendant, well knowing the premises aforesaid, but intending to bring the plaintiff into public contempt, infamy, and disgrace with and among all his neighbors and all the members of the church aforesaid, and to cause it to be believed by them and the said members of the said church that the plaintiff was a person of bad character, and unfit to be employed in his said calling, business, and profession, and an improper person for social intercourse and association

among persons of good moral and religious character, and to cause the plaintiff to be deprived of and to lose his said practice in his said calling, business, and profession, and employment therein, and of the gains and profits thereof, and of his social rank and standing aforesaid, and to degrade, vex, harass, and annoy the plaintiff by influencing and preventing the members of said church from employing the plaintiff in his said calling, business, and profession, did heretofore, on a certain day, to wit, on or about the 27th day of February last past, in a certain discourse which the defendant then uttered in the said Notre Dame Roman Catholic Church, and before and in the presence and hearing of the members of said church then and there assembled and congregated, publicly, falsely, and maliciously spoke and published of the plaintiff, in the French language, to said members of the said church and congregation then and there assembled understanding said language, the words following : [here followed words in the French language ;] that the words being translated into the English language have, and were understood by the persons to whom they were so published to have, the meaning and effect following, that is to say :

" ' During my absence there was a scandal of a marriage by law in this parish, and you know who this person is. On my return from Europe, when I first heard of it, I thought I would say nothing about it, because I supposed he would not have the sympathies of the people. But I see it is not so, and, on the contrary, this person is gaining the sympathies and favor of the people, and that they are running after this person, and they give him the first places. Why do you run after him so ? Not long ago I was invited to a party where that person was, and I refused to go, because I would not meet an excommunicated person. If any of you are sick and want my assistance, you need not send for me if this person is there, because I will not be under the same roof with him.'

" The plaintiff further says, that the defendant then and there, and by the words then and there spoken, as above alleged, publicly, falsely, and maliciously accused the plaintiff, in his said calling, business, and profession, of being a person who was unfit to associate with persons of good moral and religious character, and to be received and employed by such persons, and unworthy of

their favors, thereby meaning the plaintiff, and then and there understood to be the plaintiff, by the audience and congregation then and there present.

"And the plaintiff says, that by means of the said grievances so committed by the said defendant, the plaintiff is greatly injured in his good name, fame, and credit, and in his said trade, calling, and profession, and brought into public scandal, infamy, and disgrace with and among the members of said Catholic Church, and other good and worthy persons, and that such members of said church, and other good and worthy persons, have hitherto, by reason thereof, wholly refused and still do refuse to have any transactions, or discourse, or acquaintance with the plaintiff, as they were before accustomed to have, or to employ the said plaintiff in his said trade, calling, and profession, and would otherwise have had and done, whereby the said plaintiff has been deprived of the society of such members of the said church, and other good and worthy persons, and of the profits, income, and emoluments of his said trade, profession, and employment as aforesaid."

The defendant demurred, on the grounds, first, that the declaration did not set out a legal cause of action. Secondly, that the words alleged to be slanderous, according to their natural import and meaning, (1) could not injure the plaintiff as alleged; (2) were "not slanderous, inasmuch as they do not charge the plaintiff with any crime, do not hold the plaintiff up to contempt or ridicule, and do not appear to have been spoken of the plaintiff in his profession or calling"; (3) did not "accuse the plaintiff in his business of being a person unfit to associate with persons of good moral and religious character, and to be received and employed by such persons, and unworthy of their favors, as alleged in the amended count of plaintiff's declaration"; and (4) "could not bring the plaintiff into public contempt, infamy, and disgrace; could not cause it to be believed by the members of the church that the plaintiff was a person of bad character and unfit to be employed in his calling, or an improper person for social intercourse, or to cause the plaintiff to be deprived of and lose his practice and the gains thereof, and of his social rank and standing; and could not degrade, vex, harass, and annoy the plaintiff by influencing the members of

the church from employing the plaintiff in his business, as alleged," and " do not naturally import an intention on the part of the defendant to do the matters and things and produce the results charged." The Superior Court overruled the demurrer.

At the trial, before *Thompson*, J., the plaintiff testified that he was a physician engaged in the practice of his profession in Southbridge ; that he was a member of the Roman Catholic Church and of the parish of Notre Dame in Southbridge, of which the defendant was pastor ; that his first wife obtained a divorce from him in February, 1886 ; that he was married again on May 3, 1886, at Southbridge, during the defendant's absence in Europe, by a justice of the peace ; that by the canons of the Roman Catholic Church his act of marrying again excommunicated him from that church ; that he did not attend church after the date of his second marriage ; and that up to February 27, 1887, he was earning in his practice as a physician from eighteen hundred to two thousand dollars a year. The plaintiff was then permitted to testify, against the objection of the defendant, that there was a change in his business after February 27, 1887 ; that during the first week after that date he did not earn anything, and that subsequently he was not able to earn more than about one dollar per day, until at the end of four months he ceased to practice his profession in Southbridge.

The defendant, who was called as a witness by the plaintiff, testified, although against the defendant's objection, that on March 27, 1887, he said to his congregation, with reference to the case at bar : " An action has been brought against me. I am not the party sued. Everything falls upon the congregation. Be not disturbed. The congregation is worth sixty thousand dollars. We will see if the church shall destroy the vermin, or the vermin the church."

There was evidence tending to show that the defendant, when speaking the words in question, had in mind the plaintiff's second marriage, and referred to it ; that he occupied from ten to twenty minutes in speaking of the matter ; and that the witnesses called by the plaintiff, who heard the words, understood that the defendant referred to the plaintiff. These witnesses testified to the words spoken by the defendant, and, while differing somewhat as to the exact words used by him, collectively

testified substantially in support of all the words set forth in the declaration, and alleged to have been used by the defendant.

At the close of the evidence, the defendant asked the judge to give the following instructions among others to the jury :

" 1. That there is no evidence to warrant a verdict for the plaintiff. . . .

" 3. That the words set out do not impute to the plaintiff, as a physician, either professional misconduct or incapacity, and according to their usual and natural import do not relate to him as a professional man, and do not relate to his profession.

" 4. That there is no sufficient allegation of special damage to make the words actionable. . . .

" 6. That words uttered after the bringing of the suit, and with reference to the same, are not evidence of malice in the original publication.

" 7. That the plaintiff cannot recover in the case at bar by reason of a variance between the allegation and the proof."

The judge refused to give these instructions, but submitted the case to the jury under other instructions not excepted to, which permitted them to find that the words in question were spoken of the plaintiff in respect of his profession as a physician, and were defamatory and actionable *per se* without an averment of special damage.

The jury returned a verdict for the plaintiff, in the sum of $1,500; and the defendant alleged exceptions.

*J. Hopkins*, for the defendant.

*W. S. B. Hopkins*, (*A. J. Bartholomew* with him,) for the plaintiff.

C. ALLEN, J. 1. The defendant contends that there is no sufficient averment of special damages. The averment in respect to the plaintiff's loss of practice as a physician is, that members of the church and other persons have refused to have transactions with him, or to employ him in his profession, whereby he has been deprived of the profits, income, and emoluments thereof. The only omission of any needful averment which is suggested is, that the names of the persons who have ceased or refused to employ the plaintiff should have been set out.

Where there is merely an accusation of immorality, in words which might be spoken of any one, whether having any particu-

lar occupation or not, it has often been held that a charge of special damages, from loss of custom or society, must include the names of those who have cut off from the plaintiff in consequence of the imputation. This rule has not been so strictly held in cases where the accusation has been made for the express purpose of injuring the plaintiff in his trade or profession, and has had that effect; and in various cases, and for differing reasons, the rule in such cases has been relaxed, and a general averment of loss of customers has been held sufficient. *Evans* v. *Harries*, 1 H. & N. 251. *Riding* v. *Smith*, 1 Ex. D. 91. *Clarke* v. *Morgan*, 38 L. T. (N. S.) 354. *Hopwood* v. *Thorn*, 8 C. B. 293, 308, 309, *per* V. Williams, J., interloc. *Weiss* v. *Whittemore*, 28 Mich. 366., *Trenton Ins. Co.* v. *Perrine*, 3 Zabr. 402, 415. See also *Hargrave* v. *Le Breton*, 4 Burr. 2422; *Hartley* v. *Herring*, 8 T. R. 130.

In this Commonwealth this question has not been decided. In *Cook* v. *Cook*, 100 Mass. 194, the charge was general, and had no relation to any particular occupation of the plaintiff, and there was no question of loss of custom or of society. In *Fitzgerald* v. *Robinson*, 112 Mass. 371, the averments were full, and no question arose.

In the present case there was a demurrer to the declaration. The practice act requires that in case of a demurrer the particulars in which the alleged defect consists shall be specially pointed out. Pub. Sts. c. 167, § 12. In view of this requirement, the defendant specially and at length assigned five different grounds of demurrer, but there was no intimation of an objection on the ground that the names of the persons who would not employ the plaintiff were omitted. If the demurrer had contained this ground of objection, the plaintiff might have applied for leave to amend. Moreover, the practice act provides that no averment need be made which the law does not require to be proved, and that the substantial facts may be stated without unnecessary verbiage; Pub. Sts. c. 167, § 2; and the court may in all cases order either party to file a statement of such particulars as may be necessary to give the other party and the court reasonable knowledge of the nature and grounds of the action or defence. Pub. Sts. c. 167, § 61. The demurrer having been overruled, no motion was made by the defendant for

an order that the plaintiff be required to specify the names of persons referred to in the declaration. So far as the matter of pleading, therefore, is concerned, it must be considered that the defendant was content to go to trial without an averment of the names of these persons ; and his request, at the close of the evidence, for an instruction to the jury that there was no sufficient allegation of special damage to make the words actionable, came too late, even if otherwise it could be considered as the proper way to raise the objection.

It must now be taken, therefore, that there was a sufficient averment of special damages.

2. If there was a sufficient averment of special damages, then the question is, whether an imputation of the kind made by the defendant upon the plaintiff, when false, and when made for the express purpose of injuring the plaintiff in his profession, and when such injury is the probable and natural result of the speaking of the words, and when such injury actually follows, just as was intended by the defendant, will support an action by the plaintiff against the defendant.

It is sometimes said that it will not, unless the words are defamatory. But the better rule is, that such an imputation, whether defamatory of the plaintiff or not, will support an action under the circumstances above mentioned. There are all the elements of a wrongful act deliberately done for the purpose of working an injury, and actually working one, even though the words have no meaning which, strictly speaking, could be called defamatory. *Riding* v. *Smith*, 1 Ex. D. 91. *Lynch* v. *Knight*, 9 H. L. Cas. 577, 600, *per* Lord Wensleydale. *Barley* v. *Walford*, 9 Q. B. 197. *Green* v. *Button*, 2 C., M. & R. 707. *Trenton Ins. Co.* v. *Perrine*, 3 Zabr. 402. See also Odgers, Libel and Slander, 89, and at bottom of page 91, where the question is fully discussed. It may not be technically an action for slander, if the words are not defamatory ; but the name of the action is of no consequence. In *Kelly* v. *Partington*, 5 B. & Ad. 645, 648, Littledale, J. suggested the following illustration : "Suppose a man had a relation of a penurious disposition, and a third person knowing that it would injure him in the opinion of that relation, tells the latter a generous act which the first has done, by which he induces the relation not to leave him money,

would that be actionable?" And Sir John Campbell answers, "If the words were spoken falsely with intent to injure, they would be actionable." In Odgers, Libel and Slander, 90, the following illustration is given: "If in a small country town where political or religious feeling runs very high, I maliciously disseminate a report, false to my knowledge, that a certain tradesman is a radical or a dissenter, knowing that the result will be to drive away his customers, and intending and desiring that result, then, if such result follows, surely I am liable for damages in an action on the case, if not in an action of slander." In such a case there is an intentional causing of temporal loss or damage to another, without justifiable cause, and with the malicious purpose to inflict it, which will sustain an action of tort. *Walker* v. *Cronin,* 107 Mass. 555. And under this doctrine, in the opinion of a majority of the court, the present action may well stand.

3. But even if the averment of special damages is to be regarded as insufficient for want of naming the persons who would not employ the plaintiff as a physician, the question remains, whether the words are actionable *per se,* as containing a defamatory imputation upon the plaintiff; or, rather, whether there was enough in them to warrant the judge in submitting them to the jury.

Words are held to be actionable *per se,* which convey an imputation upon one in the way of his profession or occupation, and in such case there need be no averment of special damages. The old phraseology of Comyn's Digest, which has often been followed or repeated, is, that "words not actionable in themselves are not actionable when spoken of one in an office, profession, or trade, unless they touch him in his office" (Com. Dig., Action on the Case for Defamation, D. 27); and many cases turn upon the question whether words spoken of one who has a particular profession or trade touch him in it; that is, whether they have such a close reference to such profession or trade that it can be said that they are defamatory by means of an imputation upon him in that character, as, e. g., an imputation upon him as a clergyman, a physician, or a tradesman, distinctly from and independently of being an imputation upon him as an individual. Some of the cases have gone very far to negative such a construction. Thus, for example, it was said by

Bayley, B., in *Lumby* v. *Allday*, 1 Cr. & J. 301, that it was his opinion (for the time being) that the words must go to the length " of shewing the want of some necessary qualification, or some misconduct in the office." And in *Ayre* v. *Craven*, 2 A. & E. 2, words imputing adultery to a physician were held not actionable *per se*, and without special damage, there being nothing to show that the adultery was committed by him while acting as a physician, or in connection with his medical practice. These two cases are perhaps the most striking of any in that direction. But see also *Pemberton* v. *Colls*, 10 Q. B. 461, and *Gallwey* v. *Marshall*, 9 Exch. 294, for instances where imputations upon clergymen were held not to reflect upon them in their profession. The case of *Ayre* v. *Craven* has not escaped criticism and comment, both from the bar and the bench, though perhaps it has never been overruled. In *Hopwood* v. *Thorn*, 8 C. B. 293, Cockburn and E. James said in argument, " *Ayre* v. *Craven* has confessedly gone to the very verge of absurdity." In *Gallwey* v. *Marshall*, 9 Exch. 294, Willes said, in argument, " The case of *Ayre* v. *Craven* is an extreme case "; to which Alderson, B. replied from the bench, " There are certain professions, the proper exercise of which depends on morality ; and except for the case of *Ayre* v. *Craven*, I should have thought that that of a physician was one of them." p. 297. It may well be suggested that the doctrine of that and kindred cases has a distinct tendency to lower the estimation in which clergymen and physicians are naturally and properly held. At any rate, they do not correctly represent the law of Massachusetts. In *Chaddock* v. *Briggs*, 13 Mass. 248, which was decided when drunkenness was not a crime in Massachusetts, and when the habits in respect to drinking intoxicating liquors were freer than at present, it was held that to charge a clergyman with a single act of drunkenness was actionable *per se*. The decision of course rested on the ground that it injured him in his profession, the court saying, " a pure and even unsuspected moral character being necessary to their usefulness in the community." That case has never since been questioned in this State, and it is inconsistent with the general doctrine that the words must impute either ignorance or want of skill, or some misconduct while actually performing the duties or functions of the profession or office.

In the present case, it must now be assumed that the jury found, under the instructions which were given to them, that the defendant falsely, and with a deliberate purpose and intent of injuring the plaintiff in his profession, and for the purpose of gratifying his ill will towards the plaintiff, spoke the words in question. These words did not merely instruct the congregation that the effect of a second marriage, under the circumstances which existed, was to excommunicate the plaintiff from the Catholic Church; but they proceeded to impute against the plaintiff that such marriage or such excommunication should debar him from being employed as a physician in the parish, and that patients who employed the plaintiff as a physician could not in their sickness have the ministrations of the defendant as their priest. The question is, Does this imputation affect him, or, in the words of Comyn, touch him in his capacity as a physician? It seems to be a palpable straining of language to say that it does not. It imports not only that the plaintiff was not in himself a suitable person for a Catholic community to employ as a physician, but that, if employed, the patients must lose the attendance of the priest. But the jury might well find that the plaintiff was a suitable person to be employed there as a physician, notwithstanding his marriage and its ecclesiastical consequences.

The defendant assumed to stand in a position of authority; by virtue of this position he was able to exert a special influence upon his people; he assumed to assert and to exercise this influence; and his words amounted, in the opinion of the jury, to a plain departure from the proper exercise of such influence, and virtually to an instruction that the plaintiff was an unsuitable and improper person to be employed as a physician, and a direction not to employ him, on pain of losing caste in the church, and of losing the benefit of the defendant's ministrations as priest if they should be sick. The words were also susceptible of the meaning that the plaintiff was an unfit man even to be met socially; and that the defendant would not sit at the same table with him. Under these circumstances, the court cannot lay down a rule that the words did not touch the plaintiff in his profession. According to the verdict of the jury, they were designed to touch him, and did touch him effectually, in his

profession. The language of Parke, B., in *Southee* v. *Denny*, 1 Exch. 196, 202, 203, supports this view.

In the opinion of a majority of the court, the words might, therefore, properly be found by the jury to have been spoken of the plaintiff in respect to his profession as a physician, and they might properly be found to be defamatory and actionable without an averment of special damages. See, as supporting this result, *Sanderson* v. *Caldwell*, 45 N. Y. 398, 405, where the court formulates a rule which would include this case.

The minor questions in the case may be briefly disposed of.

If an averment of special damages was necessary, or if the words set forth were actionable *per se*, in either case the evidence of special damage was properly received.

The evidence of what the defendant said after the commencement of the action was competent upon the question of malice. *Beals* v. *Thompson*, 149 Mass. 405.

The judge properly refused to instruct the jury that the plaintiff could not recover by reason of a variance. Taking the testimony of the various witnesses, there was, from some one or other of them, evidence substantially in support of all the words set forth in the declaration.

It was competent for the jury to find that the defendant spoke the words maliciously, for the purpose of injuring the plaintiff as a physician.					*Exceptions overruled.*