McLOUGHLIN v. AMERICAN CIRCULAR LOOM CO.

(Circuit Court of Appeals, First Circuit.   October 6, 1903.)

No. 464.

**1. LIBEL—ACTIONABLE WORDS—PUBLICATION TENDING TO INJURE BUSINESS.**

A letter addressed by a manufacturing concern to its agent for the sale of a conduit for electric wires, who was engaged generally in the business of installing electrical plants by contract and wiring buildings therefor, falsely charging that in his use of such conduit he had violated the rules of the insurance companies, which letter was sent to the insurance companies and agencies in the city where the addressee was in business, and to his competitors in business, is not privileged, and, while not libelous per se, is susceptible of a defamatory meaning from which damage might naturally result, and is actionable if special damage is properly alleged and proved.

**2. SAME—ACTION—PLEADING SPECIAL DAMAGE.**

An allegation of loss of business and employment by plaintiff, a contractor, as a basis for special damages, in a declaration in an action for libel, although it does not set out the names of the persons who were deterred from employing him, nor show that they were unknown, is nevertheless good against a demurrer which does not specify such objection, under the Massachusetts practice act (Rev. Laws, c. 173, § 15).

**3. SAME.**

The sufficiency of allegations of special damage in a declaration for libel considered.

In Error to the Circuit Court of the United States for the District of Massachusetts.

John L. Hall (Charles F. Choate, Jr., on the brief), for plaintiff in error.

Samuel K. Hamilton (Theodore Eaton, on the brief), for defendant in error.

Before COLT, Circuit Judge, and BROWN and LOWELL, District Judges.

LOWELL, District Judge.   The amended declaration in this case was as follows:

"The plaintiff says he is, and since 1891 has been, doing business as an electrical contractor in the city of New Orleans, in the state of Louisiana.  That his business consists mainly in the installation of electric wires and plants under contract in the city of New Orleans and vicinity.  That the defendant is a corporation, established under the laws of Maine and doing business in the city of Boston and state of Massachusetts, engaged in the general manufacture of electric wires and tubes used in buildings, and especially in the manufacture of a conduit for the transmission of electricity, known as the 'Circular Loom Conduit.'  That on and before the 1st of April, A. D. 1899, the plaintiff became the selling agent for the defendant in the city of New Orleans and vicinity, for the purpose of introducing and establishing the sale of the defendant's product, viz., circular loom conduits.

"On or about the 28th day of August, A. D. 1899, the defendant published, by sending to the trade in which the plaintiff was engaged, the various insurance companies and agencies in New Orleans, namely, the manager of the Underwriters' Inspection Bureau of New Orleans, to the Newman-Spranley Company, and by sending to Vincent Grey, and other persons whose names are now unknown to the plaintiff, with whom the plaintiff was not dealing and with whom the defendant had no business relations, but who were rivals of the plaintiff, a false and malicious libel concerning the plaintiff, a copy whereof is hereto annexed.

"That in consequence of said act of the defendant the plaintiff was greatly injured in his business. That he has been deprived of the selling agency of the defendant's product, the circular loom conduit. His credit has been impaired, and he has been put to great inconvenience and loss thereby. That he has been unable to undertake work and contracts which, but for the act of the defendant, he would have obtained. That he has lost commissions on sales upon the product of the defendant, which, but for the act of the defendant, he would have made, and that he has been caused to suffer great mental anxiety and distress, for which the plaintiff claims special damage."

"[Copy Annexed.]

"American Circular Loom Company,

"Chelsea, Mass., U. S. A., August 28, 1899.

"T. S. McLoughlin, Esq., New Orleans, La. Dear Sir,—You are aware that we have sent our Mr. Kirkland to New Orleans to make an original investigation of the controversy between yourself and the Board of Underwriters. Mr. Kirkland has returned and has made to us the report of such investigation. It appears, beyond controversy, that you are using, and have been using, our circular loom conduit, not only under the conditions and in the places where it is permitted by the rules, but also in places and under circumstances where it is prohibited by such rules. We desire to impress upon you the fact that this company submits itself to those underwriters' rules; that such rules have been framed with its consent and acquiescence, and that we cannot, and will not, place ourselves in opposition to the execution of those rules as written.

"Under these circumstances, we think it necessary to advise you that unless you are willing to handle our material in accordance with our wishes, and in accordance with the rules of the Board of Underwriters, our business relations must cease, as we cannot afford to have any person connected with us who puts us in hostility to an organization with which we are in entire sympathy.

"Your immediate answer to this letter is requested, and we expect you in that letter to define your future policy in regard of the subject matter of this communication.

"We deem it proper to notify you that we have sent a copy of this letter to the Board of Underwriters, to the various insurance companies operating in New Orleans, and to such other persons as we have deemed it advisable to communicate with.

"Very truly yours,

"American Circular Loom Company,

"A. T. Clark, Treas."

To this the defendant demurred as follows:

"And now comes the defendant, and demurs to plaintiff's amended declaration, and for causes of demurrer shows that said declaration does not state a legal cause of action, and is not substantially in accordance with the rules of chapter 173, p. 1549, of the Revised Laws of Massachusetts, and the particulars in which said declaration is alleged to be defective are as follows: That said declaration does not allege that the defendant published any writing defamatory to plaintiff's character or reputation, and that the letter set forth in plaintiff's declaration as containing a false and malicious libel does not contain any matter libelous of or defamatory to the plaintiff; that said declaration is alleged to be for a false and malicious libel of said plaintiff by said defendant, but that said declaration does not set forth any matter that is or may be construed to be a false and malicious libel, or in any way libelous of said plaintiff; that said declaration alleges as special damages matters which are not properly the subject of special damages; and that the consequences which are alleged to have happened on account of the publication of the letter as alleged in said declaration cannot be reasonably held to be the natural and probable consequences of the publication of said letter."

The plaintiff did not contend strenuously that the language complained of was libelous per se, without allegation and proof of special damage. Some distinctions applied in an action for defamation are

highly technical, and have been adversely criticised even by judges who applied them.   The gravamen of an action for defamation is damage to the reputation of the plaintiff, naturally arising from a false report.   See Odgers on Libel and Slander (3d Ed.) 95; Morasse v. Brochu, 151 Mass. 567, 25 N. E. 74, 8 L. R. A. 524, 21 Am. St. Rep. 474.   Speaking generally, where the false report and consequent damage to the reputation are shown, an action will lie unless the occasion be privileged.   From some sorts of false report the law presumes conclusively that damage has followed, and the plaintiff need neither allege nor prove it.   Here the language is styled libelous per se.   Logically or not, the conclusive presumption of damage arises from some written words, where it does not arise if the same words are merely spoken.   Odgers, 3; Thorley v. Kerry, 4 Taunt. 355.   Except where this presumption exists, special damage to the plaintiff's reputation must be alleged and proved to have been the actual and natural result of the language used.   In an action of defamation, the distinction between injuria and damnum—injury to the plaintiff's reputation and damage arising from the injury—is particularly hard to draw.   Some language is deemed injurious without proof of damage, and damage is conclusively presumed to have followed the injury; other language is deemed injurious to the reputation only where damage has actually resulted.   Probably two diverse theories have tended to govern the action:   First, that A. is responsible for defaming B. in the ordinary sense of defamation—language libelous per se;   second, that A. is responsible to B. for the damage naturally resulting from the lies told by A. about B.—special damage.   See Ratcliffe v. Evans (1892) 2 Q. B. 524.   It may be that an action for defamation, strictly speaking, is properly maintainable only under the first theory, while under the second the action should be special on the case.   But in this country, at any rate, the two theories have not been differentiated.   In a few critical cases they may lead to results quite different, but in general the law is that above stated.   An accurate and readily applicable definition of written language, libelous per se, does not exist, and some well-established distinctions may rest on history rather than on logic.   Webb's Pollock on Torts, 290.   The language here complained of, if spoken, would not support an action without proof of special damage.   In the absence of innuendo and further colloquium, we do not deem that this language, though written, is libelous per se.

Defendant contends that the language set out is in no sense defamatory, and so is not actionable, though special damage has followed. We need not here consider the case of language, in no ordinary sense defamatory, which yet produces damage as its natural result.   It is actionable in a community of honest men to say falsely that one is a thief.   Is it actionable in a community of thieves to say falsely that one is an honest man, provided special damage naturally results from the false statement?   This question need not be answered here, because we are of the opinion that the language here used is susceptible of a defamatory meaning.   In substance it was this:   That the plaintiff had installed electric wires contrary to the rules of the New Orleans Board of Underwriters.   The letter thus charged the plaintiff

with violating the rules of the insurance companies, and it is matter of common knowledge that the owner of a house wired in a manner not permitted by these rules may well be unable to insure it. As most house owners desire insurance, and wish that their electric wires should be so arranged as to make insurance possible, the plaintiff's evidence, admissible under the allegations of his declaration, might warrant a jury in finding that the defendant's letter suggested that the plaintiff so conducted his business as to make inadvisable his employment by one having the ordinary desires of a householder. There is no conclusive presumption that damage results from the language used, and so that language is not libelous per se. Damage is a natural and proximate result of the language used, and so the language is actionable if damage actually follows. The declaration is inartificially drawn. The colloquium is defective, and the innuendo altogether wanting, but the letter is so easily susceptible of a meaning injurious to the plaintiff in the conduct of his business as to make it actionable if special damage is properly alleged and proved. The communication was not privileged. Had the publication been only to the plaintiff, there would have been no libel, but the letter became libelous when published to outsiders. If the communication to them were treated as privileged, then one might libel his enemy with impunity by publishing generally a communication originally addressed to the person defamed. It follows that, if special damage has been sufficiently alleged, the demurrer must be overruled.

The allegations of special damage appear to be these: (1) That the plaintiff has been greatly injured in his business; (2) that he has been deprived of the selling agency of the defendant's product, the circular loom conduit; (3) that his credit has been impaired; (4) that he has been put to great inconvenience and loss thereby; (5) that he has been unable to undertake work and contracts which, but for the act of the defendant, he would have obtained; (6) that he has lost commissions on sales of the defendant's product; (7) that he has been caused to suffer great mental anxiety and distress.

As has been said, loss of business and employment is a natural, though not a necessary, result of the publication; but the defendant has urged that the allegation of loss is not specific enough, and that the names must be set out of those persons who were deterred from employing him. In Trenton Ins. Co. v. Perrine, 23 N. J. Law, 402, 415, 67 Am. Dec. 400, it was said:

"The general rule certainly is that where the plaintiff alleges, by way of special damage, the loss of customers in the way of his trade, or the refusal of friends and acquaintances to associate with him, or the loss of marriage, or the loss of service, the names of such customers or friends, or the name of the person with whom marriage would have been contracted or service performed, must be stated. But the rule is relaxed when the individuals may be supposed to be unknown to the plaintiff, or where it is impossible to specify them, or where they are so numerous as to excuse a specific description on the score of inconvenience."

See Ratcliffe v. Evans (1892) 2 Q. B. 524; Evans v. Harris, 1 H. & N. 251. Here it is not apparent that the names were unknown to the plaintiff, and there is no allegation to that effect. But this objection, viz., failure to give names, is not specified in the defendant's

demurrer. The provisions of section 15 of the practice act (Mass. Rev. Laws, p. 1553, c. 173), are peculiarly applicable to a case like this. If this defect had been pointed out by the demurrer, the plaintiff might have asked leave to amend. Without determining that the defendant's objection would not have prevailed, had it been raised by a demurrer sufficiently specific, we hold that the objection is not fatal when not specifically stated in the causes of demurrer. Morasse v. Brochu, 151 Mass. 567, 573, 25 N. E. 74, 76, 8 L. R. A. 524, 21 Am. St. Rep. 474. If the defendant desires, he may still ask the court below to order the plaintiff to furnish the names of the persons upon whose failure to employ him he chiefly relies for proof of special damage.

The other allegations of special damage are insufficient. (2) and (6) were abandoned by plaintiff at the argument because not the natural result of the language used. They charge a loss by the defendant of the plaintiff's business, which could not have been the result of the libel. (3) Does not set out how the plaintiff's credit was impaired, and impairment of credit without further averment is not sufficiently shown to be a natural result of the libel. (4) is stated too vaguely, and perhaps was meant merely to reinforce (3). (5) is so vague as to be unintelligible. Why was the plaintiff unable to undertake work, and what difference is intended between undertaking work and obtaining it? Perhaps this specification was intended merely as a restatement of (1). As to (7), no connection between the libel and the damage is shown. On proper motion, these allegations may perhaps be stricken out, but the demurrer must be overruled.

The judgment of the Circuit Court is reversed, the demurrer of the defendant to the amended declaration is overruled, the case is remanded to the Circuit Court for further proceedings not inconsistent with our opinion passed down this day, and the costs of appeal are awarded to the plaintiff in error.