MEMPHIS TELEPHONE CO. v. CUMBERLAND TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Sixth Circuit. June 11, 1906.)

No. 1,458.

LIBEL—ACTION BY CORPORATION—LANGUAGE LIBELOUS PER SE.

A declaration in libel alleged that, after defendant had operated the sole telephone exchange in the city of Memphis for 20 years, plaintiff corporation was organized, and granted a franchise to construct and operate a competing exchange; that when its exchange was two-thirds completed, and after it had secured thousands of subscribers defendant caused to be published in a newspaper an article entitled "Support the Promoter," which proceeded as follows: "It took the promoters twenty years after the art of telephoning was discovered to undertake the building of an exchange, and then only after trying to float twice its value in bonds and the same in stock. It will not take them twenty minutes to get out if they succeed in unloading this 'wad' of 'securities' on the 'dear public.'" This was followed by an appeal to the public to subscribe for defendant's service. *Held*, that the language of the article, given its natural and reasonable meaning, referred to the promoters of plaintiff, and could not be enlarged by innuendo to apply to the corporation itself; that so taken it was not libelous per se as against plaintiff, and would not support an action without an averment of special damages.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

W. A. Percy and Caruthers Ewing, for plaintiff in error.
E. E. Wright and T. B. Turley, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This action was brought by the Memphis Telephone Company, the plaintiff, against the Cumberland Telephone & Telegraph Company, the defendant, for a series of alleged libelous publications made in the Commercial Appeal, a Memphis newspaper, from January 11 to May 5, 1902. A demurrer to the declaration was sustained and the suit dismissed, on the ground that the publications were not libelous per se, and no special damages were averred.

The declaration avers that the plaintiff is a corporation organized to construct and operate a telephone exchange in Memphis, and that the defendant had for more than 20 years before the plaintiff began the construction of its telephone exchange owned and operated a telephone exchange in Memphis, claiming and enjoying a monopoly of the telephone business there as the lessee of the American Bell Telephone Company; that the city of Memphis, being dissatisfied with the rates and service of the defendant, in the year 1899 granted to William P. Curtis, and his associates, successors, and assigns, a franchise authorizing the construction and operation of an additional telephone exchange, to operate in competition with that of the defendant, and thereafter the plaintiff was incorporated for the purpose of constructing and operating such an exchange; that the plaintiff, acting under such franchise, proceeded at great expense to construct its exchange, and solicited and received thousands of subscribers to its telephone service; that on January 11, 1902, when its exchange was more than two-thirds completed, the defendant, for the purpose of injuring the plaintiff's business, and of destroying public confidence in the plaintiff and its investment willfully and maliciously caused to be published of and concerning it the following libel, which we print along with the innuendo:

"'Support the Promoter.

"'It took the promoters [meaning plaintiff] twenty years after the art of telephoning was discovered to undertake the building of an exchange, and then only after trying to float twice its value in bonds and the same in stock. It will not take them twenty minutes to get out if they succeed in unloading this "wad" of "securities" on the "dear public." Subscribe for the service of the Cumberland Telephone & Telegraph Company. Telephone Building, Madison street. It has been with you twenty years, and will be with you twenty more.'

"Meaning thereby that this plaintiff and those composing it and its stockholders were and are promoters, and that previous to undertaking the building of its exchange the plaintiff tried to float or sell to the public twice the value of the exchange or plant in stock of the company, and were thereby guilty of efforts to deceive and defraud the public, and, if they could succeed in thus deceiving and defrauding the public, it would, in less time than 20 minutes thereafter, get out and abandon the telephone exchange or plant of plaintiff and the service of the public, and would violate its contract with the city, and would permit its exchange to go to ruin, thus further defrauding the public and deceiving and injuring the subscribers to its business; that its enterprise was not established for a bona fide purpose, but was organized

and constructed for the purpose of deceiving and defrauding the public and the subscribers to its exchange and service, and it was not permanent, but that it was a scheme temporary only, gotten up for the purpose of deceiving and swindling the public, and was a fake enterprise, each and all of which statements were and are willful and maliciously false, defamatory, scandalous. and libelous, and were made and published for the purpose of, and with the intent of, defaming, injuring, and destroying plaintiff's business, good reputation, and standing in the community and the confidence of the public in its enterprise."

The declaration charges 112 additional publications on succeeding days. There are no averments of special damage; the broad claim being made that these publications were all to the plaintiff's damage in the sum of $300,000.

The question is whether the language used was actionable per se, or required to be supported by an averment of special damages. While it may be conceded, as stated by Judge Lowell in McLoughlin v. American Circular Loom Co., 125 Fed. 203, 205, 60 C. C. A. 87, that "an accurate and readily applicable definition of written language libelous per se does not exist," we may, for the purpose of this case, accept as exact enough that given by Judge Wilkes in Fry v. McCord Bros., 95 Tenn. 678, 33 S. W. 568, where, after quoting from Townshend on Slander and Libel (4th Ed.), § 146, and Newell on Defamation (page 181, § 14), to the effect that, in order to constitute language libelous per se it must be "either such as necessarily in fact or by presumption of evidence occasions damage to him of whom or whose affairs it is spoken," he says (page 684):

"We think a statement in substance and effect the same, but in different language, is that words which upon their face and without the aid of extrinsic proof are injurious are libelous per se; but if the injurious character of the words appear, not from their face in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se."

In determining whether a publication respecting a corporation is libelous per se or not, it is necessary to bear in mind that the injury to be redressed must be one to its property or business, resulting in pecuniary loss. It has no reputation in a personal sense, in the sense an individual has, and an imputation that certain members of the corporation have been guilty of acts which would injuriously affect their standing in society, or render them liable to criminal prosecution, does not constitute a libel upon the corporation itself. Metropolitan Saloon Omnibus Co. v. Hawkins, 4 H. & N. 90; The Mayor, etc., of Manchester v. Williams, 1 Q. B. (1891) 94.

In the present case it appears from the declaration that the defendant for many years owned and operated the sole telephone exchange in Memphis. In order to provide competition, the city of Memphis granted a franchise to William P. Curtis, his associates, successors, and assigns, to build and operate a new exchange. Accordingly, the plaintiff was incorporated, the building of a new exchange begun, and thousands of subscribers secured. When the exchange was more than two-thirds completed, the publication was made. The publication is headed "Support the Promoter." This ironical expression evidently points to the new company or its promoters, and

is intended to direct attention to what follows, which consists of three statements respecting the promoters of the new company, followed by an appeal for continued patronage by the old.

The three statements are these:

"(1) It took the promoters twenty years after the art of telephoning was discovered to undertake the building of an exchange, (2) and then only after trying to float twice its value in bonds and the same in stocks. (3) It will not take them twenty minutes to get out if they succeed in unloading this 'wad' of 'securities' on the 'dear public.'"

The publication concludes thus:

"Subscribe for the service of the Cumberland Telephone & Telegraph Company, Telephone Building, Madison Street. It has been with you twenty years, and will be with you twenty more."

The innuendo applies the publication to the plaintiff, and ascribes to the language a number of defamatory meanings. The doctrine is well settled that the office of an innuendo is to explain, but not enlarge or change, the sense of the words. Cunningham v. Underwood, 116 Fed., 803, 807, 53 C. C. A. 99; Newell on Defamation (page 619). Notwithstanding the innuendo, the natural meaning of the words must control. It is by ascertaining their natural meaning, and whether when thus taken they necessarily caused damage to the plaintiff, that we may determine whether they were actionable per se or not. While it is for the jury to say whether the language was used in the sense ascribed by the innuendo, this is only after the court has determined that the language will bear such meaning, in other words, that the words complained of can be reasonably construed in the sense placed upon them by the innuendo. Blagg v. Stuart, 10 Q. B., (Ad. & El.) 899; Hunt v. Goodlake, 43 L. J. C. P., 54, 29 L. T. 472; State v. Smily, 37 O. S. 30, 35.

Applying this rule, the court below with difficulty reached the conclusion that the question might be left to the jury as to whether the publication would be understood by the public as referring to the new telephone company, and not merely to its promoters, and placed its decision squarely upon the point that the publication, even as explained by the innuendo, was not libelous as a matter of law. But we are not satisfied that the language, reasonably construed, will bear the meaning ascribed by the innuendo. Applied to the plaintiff, the statements are: First, that it took the plaintiff more than 20 years after the art of telephoning was discovered to undertake the building of an exchange; second, that the plaintiff undertook the building of an exchange only after trying to float twice the value thereof in its own stock and bonds; and, third, that it will not take the plaintiff 20 minutes to get out of business if it succeeds in selling to the public its stock and bonds at the fictitious value indicated.

There was nothing libelous in the first and second statements as so construed, and the third is inconsistent to the point of absurdity. Boiled down, the entire charge is that the plaintiff was trying to sell its stock and bonds at a fictitious value, and, if it succeeded, would retire from business. There is no charge that it was trying to do this by fraudulent means. The first portion of the charge is not libelous, because the company had a right to put its value upon its

stock and bonds. It was not limited either in law or morals to the actual cost of its plant. The value of the stock of a quasi public corporation, such as a telephone company, is not measured by the cost of its plant. It is the use to which the plant is put—its earning capacity—which ultimately determines the value of the stock, and that, in turn, may serve as a guide to taxing officers in fixing the value of the plant. Sanford v. Poe, 37 U. S. App. 378, 395, 69 Fed. 546, 16 C. C. A. 305; Adams Express Co. v. Ohio, 165 U. S. 194, 225, 17 Sup. Ct. 305, 41 L. Ed. 683.

The absurdity of the concluding statement when applied to the plaintiff is apparent. That an organized telephone company, with an exchange practically completed and thousands of subscribers secured, which was trying to place its stock and bonds at a high figure, would instantly retire from business as soon as it should so dispose of them is unbelievable. The selling of its stock and bonds at a high price to the Memphis public would furnish it the very sinews of war needed for a successful fight with its competitor, the old company. With a well filled treasury, and backed by local stockholders and bond-holders interested in making their investments good, the natural thing for the company would be to "stay in" and not to "get out."

These considerations satisfy us that the language was intended for the promoters, and that the public would read it in that sense. So read, the assertion was that it took the promoters 20 years after the art of telephoning was discovered to undertake the building of an exchange, that the promoters undertook to build an exchange only after trying to float twice its value in bonds and the same in stock of the new company, and that it would not take the promoters 20 minutes to get out if they should succeed in selling to the public the stock and bonds of the new company at this fictitious value. So understood, the meaning of the publication is logical and consistent. It was directed against the promoters responsible for the new exchange. Promoters usually get their profit in stocks and bonds of the enterprise they organize, which they are desirous of selling to the public. As soon as they "unload," they ordinarily "get out." If there is any imputation in this language, it is limited to the promoters. There is no reflection upon the new company, upon its credit, its stability, or its service. If, for some extrinsic cause not appearing in the publication itself, the language did prove injurious to the plaintiff, this should have been averred, and the resulting special damages alleged and proved.

We think the court was right in sustaining the demurrer, and the judgment is affirmed.