MILTON C. KLING *vs.* WALTER F. LYONS & others.

Bristol.    October 4, 1962. — November 30, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Libel and Slander.    Intentional Injury.    Proximate Cause.*

An untrue newspaper publication stating that the cashier of a bank had resigned his position was not reasonably capable of any defamatory meaning and as matter of law was not libellous.    [155–156]

Certain allegations by the plaintiff in an action respecting a statement published in a newspaper by the defendant "falsely and maliciously" that the plaintiff had resigned his position as cashier of a bank did not justify an alleged implication therefrom that the plaintiff had been discharged for dereliction of duty, nor did such allegations, together with certain further allegations respecting injury to the plaintiff's reputation and impairment of his earning capacity, state a cause of action in tort for intentional injury.    [156–157]

TORT.    Writ in the Superior Court dated August 25, 1961.

Demurrers to the declaration were sustained by *Lurie*, J., and the plaintiff appealed.

*John M. Hall* (*H. Erik Lund* with him) for the plaintiff.

*Robert K. Lamere* for Walter F. Lyons & others.

*Joseph Landis* (*Julius Thannhauser* with him) for The Chronicle Company.

WILKINS, C.J.    This action of tort is described in the plaintiff's brief as "for tortious injury to professional reputation and consequent damage" and in the defendants' brief as for libel.

The declaration in four identical counts, one against each defendant,[1] alleges that the defendant "falsely and maliciously" caused to be printed and published in The Evening Chronicle, a North Attleborough newspaper, an article concerning the plaintiff in which he is stated to have resigned his position as cashier of The Manufacturers National Bank of North Attleborough; that the article was untrue in that the plaintiff, as the defendant well knew, had not resigned; that the article was defamatory and injured the plaintiff in his office and profession in that when the article was published it was known to a considerable and respectable class of the community that the plaintiff was on his normal vacation, had indicated no intention of resigning, and had not sought employment elsewhere; that the said class believed that the plaintiff would not resign his position voluntarily and to them the reported resignation implied that the plaintiff had been discharged for dereliction of duty; that the plaintiff had always performed his duties in a capable and honest manner; and that the publication injured the plaintiff's reputation, injured him in his office or profession, impaired his earning capacity, held him up to contempt, and caused him grievous mental suffering and humiliation.

Substantially identical demurrers were filed by the defendants to the respective counts concerning them. The grounds were legal insufficiency; that the statements were not libellous or defamatory; that they had no tendency to hold the plaintiff up to hatred, ridicule or contempt, and were not reasonably capable of any defamatory meaning; and that the statements did not by their natural import or in connection with the facts alleged reflect adversely upon the plaintiff either as an individual or in his business or profession. The demurrers were sustained, and the plaintiff appealed.

The plaintiff rightly concedes that the publication is not reasonably capable of any defamatory meaning; and that to report merely that a person has resigned his position, or

---

[1] The defendants are three individuals and The Chronicle Company, a corporation.

that his employment has terminated, is not defamatory. See *Ricci* v. *Crowley*, 333 Mass. 26, 27; *Boston Nutrition Soc. Inc.* v. *Stare*, 342 Mass. 439, 442; *Jack's Cookie Co.* v. *Brooks*, 227 F. 2d 935, 937 (4th Cir.), cert. den. sub nom. *Brooks* v. *Jack's Cookie Co.* 351 U. S. 908; *Nichols* v. *Item Publishers, Inc.* 309 N. Y. 596, 601; *Ratzel* v. *New York News Publishing Co.* 67 App. Div. (N. Y.) 598, 600–601; *Gartmen* v. *Hedgpeth*, 138 Texas, 73, 78; *Mulligan* v. *Cole*, 10 Q. B. D. 549, 550–551; 138 A. L. R. 671; 53 C. J. S., Libel and Slander, § 43.

The plaintiff's brief summarizes his case as follows: The defendants, motivated by malice toward the plaintiff, knowingly caused a false publication to be made which resulted in injury to the plaintiff's reputation and impairment of his earning capacity. "This is not a case involving inadvertent mistake or negligence, but of deliberate intent to injure the plaintiff through a false publication known to be false."

Unless the words "falsely and maliciously" include an allegation of intent to injure by a false publication, there is no allegation of intent. If we assume that these words do include an allegation of an intentional injury of some kind, the crux of the declaration is that the false announcement of the resignation "implied" to a considerable and respectable class of the community that he had been discharged for a failure in duty. We think that this is not a reasonable implication, particularly to a class who knew the plaintiff well enough to know that he was on his regular vacation, had indicated no intention of resigning or of not returning to his position as cashier, and had not sought other employment.

The plaintiff relies upon Restatement: Torts, §§ 870, 873.[1] The present case does not make it necessary that we

---

[1] "§ 870. Liability for Intended Consequences. A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interests of another is liable to the other for such harm if it results, except where the harm results from an outside force the risk of which is not increased by the defendant's act." "§ 873. Causing Harm by Intentionally False Statement. A person who, with knowledge of its falsity, makes an untrue statement concerning another which he realizes will harm the other is liable to the other for such resulting harm as he should have realized might be caused by his statement." See Halpern, Intentional Torts and the Restatement, 7 Buffalo L. Rev. 7.

determine the extent to which any principles stated in those sections should be adopted as the law of this Commonwealth, because the allegations of the declaration do not fall within them. *Owens* v. *Mench,* 81 D. & C. (Pa.) 314, 316–317. In the plaintiff's argument reliance is now placed upon injury to reputation and impairment of earning capacity. On the allegations there is nothing to show that the defendants should have realized that this false report could cause an impairment of earning capacity. *McGurk* v. *Cronenwett,* 199 Mass. 457. Likewise, in view of the concession that a mere report of a resignation cannot be defamatory, there is no allegation which indicates how this particular report could or did cause injury to reputation. It may be noted also that there are no allegations that either result was specifically intended, should that be a material consideration. *Dooling* v. *Budget Publishing Co.* 144 Mass. 258.

In *Morasse* v. *Brochu,* 151 Mass. 567, the intended injury to a physician in his profession was "the probable and natural result of the speaking of the words" (p. 574). In two New York lower court cases, to which we are referred by the plaintiff, the damage due to the intentionally false statement was clearly to be anticipated. *Gale* v. *Ryan,* 263 App. Div. (N. Y.) 76. *Schauder* v. *Weiss,* 88 N. Y. S. 2d 317, affd. 276 App. Div. (N. Y.) 967.

*Orders sustaining demurrers affirmed.*
*Judgment for the defendants.*