JOHN SHARRATT & another vs. HOUSING INNOVATIONS, INC.
& others.

Suffolk.    December 5, 1973. — April 22, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Libel.    Pleading, Civil, Declaration, Demurrer.*

In an action for libel by an architect and an architectural corporation of
    which he was the principal stockholder, a statement alleged to have
    been published by the defendants, that an architectural firm other
    than the plaintiff corporation was the architect for a certain housing
    project, although not defamatory of the plaintiffs on its face, must be
    considered, with the attendant circumstances and could be under-
    stood to be defamatory, in the context of further allegations that, as
    the defendants knew, the plaintiff corporation had been awarded the
    architectural contract for the project, that the plaintiffs had claimed
    credit for the award among persons with whom they had business
    dealings, and that the plaintiffs' professional reputation among such
    persons had been impaired.  [143-145]
A count of a declaration in an action for libel alleging publication of a
    statement whose defamatory meaning was apparent only in the
    context of extrinsic facts also alleged was sufficient to withstand a
    demurrer despite the absence of an allegation of special dam-
    ages.  [145-147]
All libel is actionable per se.  [146-147]
There was no error in sustaining a demurrer to a count of a declaration
    which was predicated on a theory that the plaintiffs could recover for
    a nondefamatory intentional falsehood respecting them without
    pleading special damages.  [147-148]

TORT. Writ in the Superior Court dated November 15,
1972.

A demurrer to the declaration was sustained by *Nel-
son*, J.

*Allan R. Rosenberg* for the plaintiffs.
*Hiller B. Zobel* for the defendants.

HENNESSEY, J.    The plaintiffs appeal from an order sustaining the demurrer to both counts of their amended declaration. We first summarize the facts as stated in the amended declaration which, for the purposes of this appeal, we must assume to be true. *Loughery* v. *Central Trust Co.* 258 Mass. 172, 177 (1927).

The plaintiff John Sharratt is a registered architect and principal stockholder of the plaintiff John Sharratt Associates, Inc. In 1972 the corporate plaintiff entered into a contract with a development corporation to design, as the architect, a project known as "Madison Park Houses." Samuel Glaser and Partners was named as associated architect. Though the defendants knew that the plaintiffs had been awarded the contract as architect and had claimed credit for the award, they published a promotional brochure for the corporate defendant containing the following words: "The project, to be called Madison Park Houses, is in the Campus High School Urban Renewal Area. It will be immediately adjacent to the newly planned 2,500 pupil urban high school that is now under construction. Architects for the Madison Park project are Samuel Glaser & Partners. General contractor for the 12 story building is George B. H. Macomber Company." From this statement it could be inferred that the individual plaintiff was not the architect nor had the corporate plaintiff contracted to provide these architectural services, despite their representations to the contrary to those with whom they had business dealings.

The plaintiffs' declaration is in two counts. Count 1 is in essence for a libel by the above quoted words. Count 2 repeats the averments of count 1 and adds an allegation that the statement was intentionally made to injure the professional reputation of the plaintiffs. Both counts were stated to be for the same cause of action. Neither count alleges any special damages.

The defendants' demurrer to both counts was sustained in Superior Court, and the plaintiffs appealed. We hold, for

the reasons discussed below, that the judge was in error in sustaining the demurrer as to count 1 but that he ruled correctly in sustaining the demurrer as to count 2.


## COUNT 1.

The defendants urge that count 1 is defective for two alternate reasons: (1) the statement in question is not defamatory and therefore may give rise to no cause of action, and (2) in a case of "libel per quod," i.e., not defamatory on its face, special damages must be alleged to withstand demurrer. We treat each of these arguments independently.

1. "It is now well settled that the character of a publication as being libellous or otherwise is not to be judged by what we ourselves would understand it to mean, but that commonly the question is one of fact, and that the court can rule as matter of law that the publication is not libellous and can withdraw the case from the jury only when it is apparent 'that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense.' [Citations omitted.]" *King* v. *Northeastern Publishing Co.* 294 Mass. 369, 370-371 (1936).

The defendants urge that on their face the words in question cannot possibly be understood to convey any defamatory meaning. The plaintiffs assert that in the circumstances in which they were printed, and of which their audience was aware, they could well be understood as defamation. They are both correct. Thus, the issue here is whether the determination is to be made by a consideration of the words alone or in the context of the extrinsic facts pleaded.

Certain passages in several of our prior decisions may be taken to imply that such extrinsic facts are relevant only to interpret ambiguous language, and that the meaning of

words clearly nondefamatory in and of themselves cannot be expanded by reference to their surrounding circumstances. *McCallum* v. *Lambie,* 145 Mass. 234, 237 (1887). *Lovejoy* v. *Whitcomb,* 174 Mass. 586, 587-588 (1899). *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258, 261 (1934): "If the words of a libel are clearly defamatory, no innuendo is necessary; if incapable of a defamatory meaning, innuendo will not make them so; but if reasonably susceptible of two or more meanings, one of which is defamatory, an innuendo may be necessary." A closer examination of these cases, however, reveals that they all dealt with ambiguous words and that the authors of the opinions thus merely used language appropriate to the facts of the cases before them. They are therefore not decisive of the issue now before us.

Numerous other cases are precedent for the opposite proposition, that "a demurrer to a declaration in libel cannot be sustained, nor can a case be withdrawn from the jury, unless the words (under the circumstances, G. L. [Ter. Ed.] c. 231, § 147, Forms, 18, *Instruction,* page 2893, *McCallum* v. *Lambie,* 145 Mass. 234, 237, *Friedman* v. *Connors,* 292 Mass. 371, 374-375) are incapable of a defamatory meaning." *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34 (1939). The cases containing language which tends to favor this side of the issue are both more numerous and more nearly in point. Thus, in *Kling* v. *Lyons,* 345 Mass. 154 (1962), in holding that a printed statement that the plaintiff had resigned his job was incapable of defamatory meaning, we noted that "there is no allegation which indicates how this particular report could or did cause injury to reputation" (at 157). See also *Peck* v. *Wakefield Item Co.* 280 Mass. 451 (1932). The clear implication is that with such an allegation the complaint would have withstood the demurrer. In *Perry* v. *E. Anthony & Sons, Inc.* 353 Mass. 112 (1967), the published report of the outcome of a libel suit was held not defamatory, even with the innuendo alleged.

"The essential question is whether the statement was capable of a derogatory meaning on its face or is to be given

such a meaning in consequence of any facts shown in the evidence. . . . No facts are set out which show that in consequence of the circumstances attending their publication the words were intended to convey or would or could be understood to convey a derogatory meaning not on their face." *Colby Haberdashers, Inc.* v. *Bradstreet Co.* 267 Mass. 166, 170 (1929). In the *Colby* case, we sustained the defendant's exceptions and reversed a verdict for the plaintiff. See also *Ellis* v. *Brockton Publishing Co.* 198 Mass. 538 (1908), *Epstein* v. *Dun & Bradstreet, Inc.* 306 Mass. 595 (1940), and *Ricci* v. *Crowley*, 333 Mass. 26 (1955).

Thus words unambiguously not defamatory on their face have apparently never yet withstood a demurrer in a reported Massachusetts case. Yet the cases cited above lend support to a conclusion that attendant circumstances may be shown as proof of the defamatory nature of the words. We believe that to be sound policy, and we so hold. To be actionable as libel, words need not hold a plaintiff up to ridicule or damage his reputation in the community at large, or among all reasonable men. It is enough that they do so among "a considerable and respectable class" of people. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 454 (1932). *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 33 (1939). Here the plaintiffs have alleged damage to their professional reputation among the real estate development and architectural community in which they work. It would be anomalous at best if words clearly understood in a defamatory sense among that community should fail to be actionable merely because they would appear innocent to the general public.

2. The defendants' assertion that special damages must be pleaded to survive demurrer is based on the fact that the defamatory meaning of the printed words is apparent only in the context of extrinsic facts, if at all. That extrinsic facts are also needed to determine if the words apply to the plaintiff is irrelevant. "Whether the article was published concerning the plaintiff is generally a question of fact." *Hubbard* v. *Allyn*, 200 Mass. 166, 171 (1908). The facts

pleaded "tended to show that such language in the then state of information of the public mind . . . [could] be understood as referring to the plaintiff." *Ibid.* "It easily could be learned by those of the public who wished to discover it, aided by the facts and circumstances attending the publication." *Robinson* v. *Coulter*, 215 Mass. 566, 571 (1913). See *Brauer* v. *Globe Newspaper Co.* 351 Mass. 53 (1966).

Authoritative opinion and case law are both divided on the question whether or not special damages must be pleaded in a case of "libel per quod." The disputed issue "concerns cases of libel in which the defamatory meaning, or innuendo, is not apparent on the face of the publication, but must be made out by proof of extrinsic facts; and the question is whether, in such a case, the libel is actionable without proof of special damages, where the same words would not be so actionable if they were slander." Prosser, More Libel Per Quod, 79 Harv. L. Rev. 1629, 1630-1631 (1966). Professor Prosser's view is that "libel per quod" should require the pleading of special damages, and he believes the majority of jurisdictions that have dealt with the issue agree. His views on both policy and law are disputed in Eldredge, The Spurious Rule of Libel Per Quod, 79 Harv. L. Rev. 733 (1966). Mr. Eldredge argues that there is no justification in law, policy or history, for distinguishing between different categories of libel regarding a requirement for pleading special damages.

There is certainly language in opinions of this court which supports the view that all libel is actionable per se. In *Muchnick* v. *Post Publishing Co.* 332 Mass. 304 (1955), we stated at p. 308 concerning an allegation of loss of business that "while not essential to stating a cause of action for libel, the allegation is proper to enable him [the plaintiff] to lay a foundation for proof of an item of damage. Otherwise he would be limited to those damages naturally and necessarily to be expected from the publication." In the same case we also stated that we "adopt the rule in the Restatement: 'One who is liable either for a libel or for a slander actionable per se is also liable for any special harm

of which the defamatory publication is the legal cause.' Restatement: Torts, § 622. Restatement: Torts, § 569, comment c; compare § 575, comment b." *Ibid.* See *King* v. *Northeastern Publishing Co.* 294 Mass. 369, 371-372 (1936), and *Lynch* v. *Lyons*, 303 Mass. 116, 118-119 (1939), which imply that the distinction between "meaning on face" and "meaning in context" is irrelevant to the issue of pleading special damages.

Consistent with the implications of these cases, we now hold that all libel is actionable per se.[1]

## COUNT 2.

The cause of action intended to be stated by count 2 is not entirely clear. It may perhaps best be described as a count for intentional falsehood. To the extent that it seeks to recover for a defamatory falsehood it is repetitive of count 1. The allegation of an intent by the defendants to harm the plaintiffs adds nothing. Punitive damages are not recoverable in a libel action in this Commonwealth, *Ellis* v. *Brockton Publishing Co.* 198 Mass. 538 (1908), even in the presence of actual malice toward the plaintiff. Cf. *Goodrich*

---

[1] In view of this holding, it is unnecessary for us to seek further support for our conclusion. However, we do note, additionally, that authorities appear to be unanimously of the opinion that no special damages need be pleaded, whether words are libellous on their face or proved libellous only through extrinsic evidence, if the same words would be actionable per se (i.e., without pleading special damages) had they been spoken. Harper & James, Torts, § 5.9, pp. 372-373 (1956). Eldredge, The Spurious Rule of Libel Per Quod, 79 Harv. L. Rev. 733 (1966). Prosser, More Libel per Quod, 79 Harv. L. Rev. 1629, 1632-1634 (1966).

"It is settled that words spoken orally are not actionable *per se,* unless they charge the plaintiff with a crime, or state that he is suffering from certain diseases, or prejudice him in his office, profession or business or may probably tend to do so." *Lynch* v. *Lyons,* 303 Mass. 116, 118-119 (1939). Several cases have interpreted the exception pertaining to professional reputation. *Chaddock* v. *Briggs,* 13 Mass. 248, 252 (1816). *Morasse* v. *Brochu,* 151 Mass. 567, 575 (1890). See *Craig* v. *Proctor,* 229 Mass. 339, 341 (1918). Where "spoken words are actionable *per se* . . . [a] *fortiori* the written words to the same effect are actionable . . . under the somewhat broader rule applicable to libel." *Lynch* v. *Lyons,* 303 Mass. 116, 122 (1939). *Friedman* v. *Connors,* 292 Mass. 371, 375 (1935).

If a jury were to find the words in question in the present case defamatory at all it would have to be because they impugn the plaintiffs' professional integrity and honesty. Accordingly, for this additional reason, they would be held to be actionable without allegation or proof of special damages.

v. *Stone,* 11 Met. 486 (1846); *Brewster* v. *Boston Herald-Traveler Corp.* 188 F. Supp. 565, 577 (D. Mass. 1960).

We assume that it is possible, in some circumstances, to establish proof of an intentional falsehood which is not defamatory. To the extent that count 2 is predicated on a theory that the plaintiff may recover for a nondefamatory intentional falsehood without pleading special damages it must fall. The plaintiffs place great reliance on the case of *Morasse* v. *Brochu,* 151 Mass. 567 (1890). The issue in that case was not whether special damages must be alleged but whether there was a sufficient averment of special damages. After holding that there was, the court considered whether the spoken words were in any case actionable per se and concluded that they might "properly be found by the jury to have been spoken of the plaintiff in respect to his profession as a physician, and they might properly be found to be defamatory and actionable without an averment of special damages" (at 578).

The general damages recoverable in a defamation action are those naturally and necessarily flowing from the wrong. They include damage to reputation, *Hemmenway* v. *Woods,* 1 Pick. 524 (1823), as well as for mental pain and suffering. *Hastings* v. *Stetson,* 130 Mass. 76 (1881). *Brewster* v. *Boston Herald-Traveler Corp.* 188 F. Supp. 565 D. Mass. 1960). These elements of recovery are based on the harm which the law assumes is done by defamatory words. Such an assumption would be unwarranted as to nondefamatory words, however maliciously said or printed. While such intentional falsehoods may indeed be actionable, recovery would be for the specific, actual and proven harm done to the plaintiff's economic interests. Cf. *Morasse* v. *Brochu,* 151 Mass. 567 (1890). Such a cause of action would be analogous to one for interference with contractual relations (see *Beekman* v. *Marsters,* 195 Mass. 205 [1907]), or interference with advantageous relations (see *Lewis* v. *Corbin,* 195 Mass. 520 [1907]). In such cases, it is the actual and not the assumed damage which provides the basis for recovery, and which accordingly must be alleged. *Walker* v. *Cronin,* 107 Mass. 555 (1871).

3. The order sustaining the demurrer is reversed. A new order is to be entered overruling the demurrer as to count 1 and sustaining the demurrer as to count 2.

*So ordered.*