Cratsley, J.
INTRODUCTION
The defendants, A. Anthony Tappe and Associates, Inc. (“Tappe”), Jeffrey M. Hoover, Keith Hoffses, and A. Anthony Tappe as an architectural firm and individual architects, bring these motions against plaintiff, TLT Construction Corp. (“TLT") for summary judgment. See Massachusetts Rules of Civil Procedure, Rule 56(b). Defendants, have moved for summary judgment of all “delay” claims asserted by the plaintiff in their Motion for Partial Summary Judgment and of all remaining claims in their Supplemental Motion for Summary Judgment (“motions”).
Plaintiffs action arises from a construction project on the Beverly Library in which defendants acted as the project architect and plaintiff as the general contractor. TLT brought the current action against Tappe alleging negligent misrepresentation, interference with contractual relations, tort (including intentional & negligent misrepresentation, fraud, deceit, and defamation), interference with advantageous business relations, and violations of Mass. Gen. L. ch. 93A. Defendants argue through their motions that summary judgment should be granted for one or all of three reasons; (1) TLT’s contract with the City of Beverly (“City”) contained a “no damages for delay” clause, (2) arbitration between the City and TLT bars the claims and/or issues resolved in that proceeding from being litigated again, and (3) the economic loss doctrine prohibits TLT from recovering for purely economic damages.
Before this Court are two motions for summary judgment which would dismiss all claims alleged by TLT against Tappe. For the reasons discussed below, defendants’ motions for summary judgment are ALLOWED.
BACKGROUND
The following information, in pertinent part, was presented to this Court in materials appropriate for consideration on motions for summary judgment:
I. Contractual Provisions
Tappe entered into an agreement titled “Standard Form of Agreement Between Owner and Architect” (“Architect Contract”) for the architectural design and supervision of renovations and additions to the City of Beverly Public Libraiy (“Project”). (The American Institute of Architects 1987 Edition of document B141; Kostinden Aff. at par. 3.) TLT entered into an agreement entitled “General Conditions of the Contract for *203 Construction” (“Construction Contract”) for construction of the Project. (The American Institute of Architects 1976 Edition of document A201; Kostinden Aff. at par. 4.) The Construction Contract contained the flowing provision:
The Architect will be the Owner’s representative during construction and until final payment is due. The Architect will advise and consult with the Owner. The Owner’s instructions to the Contractor shall be forwarded through the Architect. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified by written instrument in accordance with Subparagraph 2.2.18.
(Construction Contract at pg.5-6, par. 2.2.2.)
Additionally there were supplementary conditions to the Construction Contract incorporating Mass. Gen. L. ch. 30, §390. Paragraph 1.2 of the Supplementary Conditions, Part II, provides:
Except as otherwise provided by law and by this Paragraph 1.2, the Contractor shall not be entitled to damages on account of any hindrances or delays, avoidable or unavoidable; but if such delay be occasioned by the awarding authority, the Contractor may be entitled to an extension of time only, in which to complete the work, to be determined by the Architect.
(a) The awarding authority may order the Contractor in writing to suspend, delay or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided, however, that if there is a suspension, delay or interruption for fifteen days or more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the Contractor on such increase; and provided further, that the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption or failure to act to the extent that such is due to any cause for which this contract provides for an equitable adjustment of the contract price under any other contract provisions.
(Supplementary Conditions atpg. SCII-5, par. 1.2(a).)
II. Allegations by TLT against Tappe
Pursuant to the current action, TLT has made the following allegations against Tappe:
Tappe was the architect for the Project, designed all the plans and specifications for the project including but not limited to the architectural elevations, structural steel, and other incidental drawings and also acted as the administrator of the project. (Kostinden Aff. at par. 5.) Tappe represented to TLT and TLT’s subcontractors that the architectural drawings for the project were proper. (Kostinden Aff. at par. 7.) In accordance with the contract requirements, Tappe was suppose to review the structural steel drawings, but they refused to do so in a timely fashion pursuant to the contract requirements. (Kostinden Aff. at par. 8.) Tappe sent the drawings back to TLT, refusing to review them. (Kostinden Aff. at par. 8.) Tappe made substantial modifications adding additional steel. (Kostinden Aff. at par. 9.) The architect refused to admit that there were errors in the drawings and refused to issue a written stop work order. (Kostinden Aff. at par. 10.) Tappe added steel at a substantial cost to the steel fabricator and TLT. (Kostinden Aff. at par. 10.) There was a delay of approximately 114 days due to the flaws in the structural steel design. (Kostinden Aff. at par. 11.) Tappe did not adhere to the contractually specified submittal schedule resulting in approximately 74 submittals exceeding the 21 days allowed for review of shop drawing submittals. (Kostinden Aff. at par. 13, 14.) Tappe did not give any time extensions for this protracted review of TLT’s submittals. (Kostinden Aff. at par. 15.) 84 days elapsed from the contractually required 15 days in preparing the room finish schedule. (Kostinden Aff. at par. 17.) Tappe issued various change orders to correct discrepancies and omissions in his drawings and specifications at times which substantially disrupted TLT’s work and its subcontractors work. (Kostinden Aff. at par. 18.) The contract plans were deficient in providing for insulation of duct work in violation of the Massachusetts Building Code. (Kostinden Aff. at par. 19a.) Tappe issued a change order to correct this violation which most notably interrupted the drywall installation for 16 days. (Kostinden Aff. at par. 19a.) Even before the bidding, the mechanical engineer advised Tappe of this problem. (Kostinden Aff. at par. 19a.) Tappe made assurances to the Library Committee that no additional plaster work would be required in addition to the plaster work provided for in the architectural contract. (Kostinden Aff. at par. 19b.) At the end of the project Tappe requested additional plaster repairs which interrupted the painting subcontractor’s work and added some $23,000 in cost. (Kostinden Aff. at par. 19b.) Tappe misrepresented the floor heights on their plans resulting in a discrepancy between the alignment of the existing elevations and the “addition” and further refused to approve a change order for the correction of this work which was a direct result of his negligence. (Kostinden Aff. at par. 20.) Tappe issued a punch list with overinflated figures and refused to update the punch list despite the work being performed. (Kostinden Aff. at par. 21.) Tappe refused to respond to TLT and its subcontractor’s requests for review or clarification regarding items on the punch list. (Kostinden Aff. at par. 22.) Tappe submitted a feeling mark for the project evaluation form pursuant to Mass. Gen. L. ch. 149, §44D. (Kostinden Aff. at par. 26.) Tappe submitted a below average evaluation stat *204 ing falsehoods, misrepresentations and defamatory statements. (Kostinden Aff. at par. 27.)
III. Arbitration
During the Arbitration proceeding, TLT alleged that Tappe caused delays and their work on the Project contained several “errors and omissions.” Transcript of TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. (1984) (Rovner, Arb.) Vol. 1, p. 46, 11. 24; p. 47, 11. 1-5 (“Arb. Tran.”). TLT argued that there were some 700 submittals that were not returned within the contractually required 21 days which caused delays and extra cost throughout TLT’s work. (Arb. Tran. Vol. 1, p. 45, 11. 13-15; Vol. 3, p. 22, 11. 10-16.) TLT also argued that the change order correcting the steel drawings caused four months delay. (Arb. Tran. Vol. 1, p. 44, 11. 15-19; Vol. 3, p. 42, 11.8-12.) There was a change order for the ductwork and TLT claims they received $32,000 for this change order when it actually cost $45,000 and caused delays. (Arb. Tran. Vol. 1, p. 43, 11. 13-24; Vol. 3, p. 44, 11. 20-24 & p. 45, 11. 1-5.) TLT argued that the floor elevations were mismatched and did not line-up resulting in extra cost and delays for TLT. (Arb. Tran. Vol. 1, p. 42, 11. 23-24; p. 43, 11. 1-4.) TLT argued in their opening statement that Tappe was the City’s agent. (Arb. Tran. Vol. 1, p. 47, 11.3.) The City moved for all delay based claims to be dismissed. See “Respondent’s Motion to Dismiss/Strike Delay Claims,” TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. (1994) (Rovner, Arb.).
IV. Findings of American Arbitration Association Construction Industry Arbitration Tribunal (“Tribunal”) in the Matter of T.L.T. and the City of Beverly
The Arbitrator Gerald Rovner (“Rovner”) granted the City’s Motion to Dismiss/Strike Delay Claims. TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. 1, 4-5 (May 23, 1994) (Rovner, Arb.).[1] In doing so, Rovner states;
The contract provides a “No Damages for Delay Provision” resulting in TLT not being entitled to monetary damages on account of delay, but rather, entitled to extensions of time only.
“No damage for delay” clauses have been uniformly enforced according to their terms in Massachusetts. Unfortunately, the Courts of the Commonwealth appear to be in the minority position and will strictly enforce such clauses even though resulting damage may occur through no fault of the contractor.
Such clauses have been held to hold the City harmless from any liability it might otherwise have for delays which it caused, even if the City’s actions were negligent, unreasonable, due to indecision, or were arbitrary, willful and capricious.
Such clauses have even been upheld when the delays were due to the owner’s negligence and mistakes in judgment.
Reluctantly, I find that I must allow the City’s Motion to Strike the Delay Claims so far as TLT is seeking monetary damages . . ."
Id. at 4, 5.
After an evidentiary hearing, the Arbitrator awarded TLT $217,947.00 as the amount of the adjusted contract balance ($240,747.00 with interest). TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. 2 (February 8, 1994) (Rovner, Arb.).[2] In his decision, Rovner states:
3. Regarding the discrepancy in the plans prepared by the architect related to the floor heights, I find that the architect exhibited a cavalier attitude in resolving this issue when it was specifically called to its attention. Likewise I find that T.L.T. should have been more aggressive in seeking a definitive answer to its inquiry. The architect should have discovered the problem in its review of the structural steel shop drawings. Both the City of Beverly (hereinafter referred to as the City) and T.L.T. are each %50 responsible for this item. Accordingly I award T.L.T. the sum of $9,467.00 . . .
6. T.L.T reserved its rights to seek extra compensation for its costs involving duct work insulation when it signed off on CO # 9. The architect as wrongfully denied T.L.T. the sum of $12,000 for the extra work ordered . . .
8. The parties have agreed that T.L.T. has not completed $5,105.00 worth of work shown on the Punch list. I find that the City is entitled to and additional $18,190.00 worth of credits for uncompleted work for a total credits due the City of $23,295.00.
Id. at 2, 3.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. “ Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submit *205 ting affirmative evidence negating an essential element of the nonmoving parly’s case or by showing that the nonmoving parly is unlikely to submit proof that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). ’The doctrine of res judicata may properly be asserted as a defense on a motion for summary judgment." Miles v. Aetna Casualty and Surety Co., 412 Mass. 424, 426 (1992) citing Dawd v. Morin, 18 Mass.App.Ct. 786, 789 n.9 (1984).
The Legal Doctrine of Res Judicata
Tappe, through its motions for summary judgment, claims that the doctrine of res judicata should preclude TLT from pursuing its performance related claims and its delay related claims. Specifically, Tappe agues that the Arbitration Award and Decision of the Arbitrator resulting from arbitration conducted by the American Arbitration Association (“AAA”) involving the City and TLT should preclude TLT’s current action before this Court. Since the doctrine of res judicata can be invoked to preclude relitigation of claims resolved during a prior arbitration, summary judgment is appropriate for consideration in this case. Miles v. Aetna Casualty and Surety Co., 412 Mass. 424, 427 (1992); Bailey v. Metropolitan Property and Liability Ins. Co., 24 Mass.App.Ct. 34, 35 (1987).
The doctrine of res judicata
provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to eveiy matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.
Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). The Massachusetts Supreme Judicial Court observed in Harker v. Hoyloke, 390 Mass. 555 (1983), “(P)ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.” Harker v. Holyoke, 390 Mass. 555, 558 (1983) quoting Wright Mach. Corp v. Seaman-Andwall Corp., 364 Mass. 383, 688 (1974). Three factors must be met for the doctrine of res judicata to be utilized by this Court; “(1) identity or privity of the parties to the present and prior action; (2) identity of the causes of action; and (3) a prior final judgment on the merits.” Chestnut Hill Development Corp. v. Otis Elevator Co., 739 F.Supp. 692, 695 (1990) citing Almeida v. Travelers Ins. Co., 383 Mass. 226, 229 (1981).
As to the first factor, privity of the parties, “The doctrine [of res judicata] does not require identity of the parties concerned; instead, the parties need only be in privity or in a relationship ... in which one party is vicariously liable for the acts of the other.” Capizzi v. Verrier, No. 95-1753-G Slip Op. (Suffolk Superior Ct., Mass. July 23, 1996) (J. Hinkle), citing Restatement (Second) of Judgments §51 (1982).
As to the second factor, identity of the causes of action, “A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by the court. . . cannot be disputed in a subsequent suit...” Bailey v. Metropolitan Property & Liability Ins. Co., 24 Mass.App.Ct. 34, 36 (1987) quoting Montana v. United States, 440 U.S. 147, 153 (1979); Southern Pac. R.R. v. United States, 168 U.S. 1, 48-49 (1897). Bailey concluded, “. . . that a party not involved in a prior arbitration may use the award in that arbitration to bind his opponent if the party to be bound, or a privy, was before the arbitrator, had a full and fair opportunity to litigate the issue, and the issue was actually decided by the arbitrator or was necessary to his decision.” Bailey, 24 Mass.App.Ct. 34, 37. Chestnut Hill Development Corp. v. Otis Elevator Co., 739 F.Supp. 692 (D.Mass. 1990), expounds on this concept by stating, “A second action is barred under res judicata even if the plaintiff asserts a new theory of recovery or seeks a new remedy so long as the second action grows out of the same transaction, act, or agreement upon which the previous claim was based.” Chestnut Hill, 739 F.Supp. 692, 696 (D.Mass. 1990) citing Mackintosh v. Chambers, 285 Mass. 594, 596 (1934); Ratner v. Rockwood Sprinkler Co., 340 Mass. 773, 775-6 (1960); Issac v. Schwartz, 706 F.2d 15, 16 (1st Cir. 1983); Assoc. Gen. Contractors v. Boston Dist. Council, 642 F.Supp. 1435, 1438 (D.Mass. 1986).
As to the third factor, final judgment on the merits, “When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has.” Bailey v. Metropolitan Property & Liability Ins. Co., 24 Mass.App.Ct. 34, 36-37 (1987) citing Restatement (Second) of Judgments §84 (1982), comment c.
The central question in this case concerns the identity of the causes of action between the arbitration and the current claims. “The burden of showing that the issue in question was actually decided or necessary to the arbitrator’s decision is on the party asserting preclusion while the party potentially subjected to preclusion has the burden of showing that he did not have a full and fair opportunity to litigate the issue previously.” Id. at 37. This Court will conduct its analysis viewing all facts “in the light most favorable to . . . [the nonmoving party], taking all facts set forth in its supporting affidavits as true," since the current motion is one for summary judgment. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991) citing Grahm v. Quincy Food Serv. Employees Ass’n and Hosp., Library and Pub. Employees Union, 407 Mass. 601, 603 (1990).
*206 Application of Res Judicata Doctrine [A] Privity of the Parties
Since Tappe argues that the arbitration between TLT and the City should preclude the claims against them, they must demonstrate that they were in privity with the City and that the City would be liable for Tappe’s actions. Capizzi v. Verrier, No. 95-1753-G Slip Op. (Suffolk Superior Ct., Mass. July 23, 1996) (J, Hinkle) citing Restatement (Second) of Judgments §51 (1982). As stated in the Construction Contract, Tappe was the City’s representative to TLT. (Construction Contract at pg. 5-6, par. 2.2.2). Additionally, in the arbitration opening statement by TLT’s attorney, counsel stated that Tappe was the City’s agent. (Transcript of TLT Construction Corp. v. City of Beverly, Am. Arb. Ass’n, No. 11-110-00211-93, Vol. 1, p. 47, 11. 3 (November 8, 1993).) Furthermore, the arbitrator recognized Tappe’s representation of the City and awarded TLT damages to be paid by the City for the acts of Tappe. (For example, see Arbitration Award pg. 1, par. 3.) These facts establish the relationship between the City and Tappe as one which shows the City’s privity with and liability for Tappe’s actions.
Plaintiff maintains that a “no joinder” provision in the Construction Contract prevented them from bringing Tappe into the arbitration. They also point out that a party cannot be forced into arbitration without a specific arbitration provision in a contract. Lincoln Sudbury Regional School District v. Frasca, 354 Mass. 22 (1968). These contentions do not change the fact that Tappe was the City’s representative. In fact, they only bolster this proposition since there was no reason for Tappe to be included in the arbitration since the City was liable for Tappe’s actions as claimed in the arbitration. Therefore, this Court rules that at all times during which the alleged acts occurred, Tappe was the City’s representative.
[B] Causes of Action
Tappe must demonstrate that the claims brought by TLT against the City during the arbitration are essentially the same claims brought in this court action in order for the prior arbitration to have a preclusive effect. Bailey v. Metropolitan Property & Liability Ins. Co., 24 Mass.App.Ct. 34, 36 (1987). Tappe can establish the similarity of the causes of action by showing that TLT had a “full and fair opportunity to litigate the issues, and the issue was actually decided by the arbitrator or was necessary to his decision.” Id. at 37. Furthermore, TLT can use the fact that the current theories of recovery arise from the same “transaction, act, or agreement upon which the previous claim was based,” to preclude TLT’s current claims. Chestnut Hill Development Corp. v. Otis Elevator Co., 739 F.Supp. 692, 696 (D.Mass. 1990); Ratner v. Rockwood Sprinkler Co., 340 Mass. 773 (1960).
Many of TLT’s current allegations and their arbitration allegations are based on Tappe’s alleged acts or omissions which caused alleged delays in TLT’s construction plans and resulted in increases financial expense for TLT. The arbitrator heard opening arguments and testimony concerning TLT’s delay claims against the City concerning several alleged incidents involving Tappe. (Arb. Trans. Vol. 1, p.42, 11. 8-12, 23-24; p. 43, 11. 1-4, 13-24; p. 44, 11. 15-19; p. 45, 11. 13-15; p. 46, 11. 24; p. 47, 11. 1-5; Vol. 3, p. 22, 11. 10-16; p.42, 11. 8-12; p. 44, 11. 20-24; p. 45, 11. 1-5.) TLT currently claims Tappe’s acts and omissions during the Project caused them damage. (Kostinden Aff. at par. 8-11, 13-15, 17,19a.) Taking the structural steel drawings as a specific example, TLT currently claims that Tappe; (1) did not review the structural steel drawings in a timely fashion, (2) refused to review the structural steel drawings, (3) made substantial modifications to the drawings adding additional steel, (4) refused to admit that there were flaws in the drawings, and (5) refused to issue a written stop work order; resulting in 114 day delay due to the flaws in the structural steel design. (Kostinden Aff. at par. 8-11.)
Upon motion by the City, the arbitrator found that “ ‘No damage for delay’ clauses have been uniformly enforced according to their terms in Massachusetts,” and ruled "... that I must allow the City’s Motion to Strike the Delay Claims.” (Motion to Dismiss; Decision of the Arbitrator at pg. 4, 5.) “Even if [the arbitrator] was mistaken in his interpretation of the legal effect of the contract, the award does not thereby become invalid. The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him.” City of Worcester v. Granger Bros., Inc., 19 Mass.App.Ct. 379, 385 (1985) citing Jordan Marsh Co. v. Beth Israel Hosp. Assn., 331 Mass. 177, 186 (1954).[3] Thus, TLT accepted the ruling of the arbitrator per the terms of the Construction Contract. Additionally, TLT had a full and fair opportunity to litigate all delay claims evidenced by the fact that they actually did so by arguing such to the Arbitrator. (Arb. Trans. Vol. 1, p.42, 11. 8-12, 23-24; p. 43, 11. 1-4, 13-24; p. 44, 11. 15-19; p. 45, 11. 13-15; p. 46, 11. 24; p. 47, 11. 1-5; Vol. 3, p. 22, 11. 10-16; p. 42, 11. 8-12; p. 44, 11. 20-24; p. 45, 11. 1-5.) Therefore, this Court holds that all claims based on Tappe’s alleged delay through act or omission were decided by the arbitrator.
Some of the remaining claims allege negligent misrepresentation, interference with contractual relations, tort (including intentional & negligent misrepresentation), interference with advantageous business relations and violations of Mass. Gen. L. ch. 93A. Considering these claims without support resulting from any delay allegations, the following acts or omissions alleged by TLT against Tappe remain. Tappe represented the architectural drawings as proper (Kostinden Aff. at par. 7) even through they were not (Kostinden Aff. at par. 9-10 (structural steel), 19a (duct work), 20 (floor heights), 21-22 (punch list). Tappe assured the Library Committee that no additional *207 plaster work would be needed, but additional plaster work was later required. (Kostinden Aff. at par. 19b.) Tappe issued a punch list with overinflated figures. (Kostinden Aff. at par. 21.)
Taking these claims as true, this Court finds as a matter of law that TLT has no recovery separate from what has already been granted by the arbitrator. The arbitrator based the rulings applicable to the current causes of action on the floor height discrepancy (Decision of the Arbitrator at par. 3), the structural steel defects (Decision of the Arbitrator at par. 3), the duct work (Decision of the Arbitrator at par. 6), and the punch list (Decision of the Arbitrator at par. 8). The arbitrator awarded damages accordingly. (Decision of the Arbitrator at par. 3,6,8.) Therefore, TLT had a “full and fair opportunity to litigate the issues, and the issue[s] [were] actually decided by the arbitrator or [were] necessary to his decision.” Bailey v. Metropolitan Property & Liability Ins. Co., 24 Mass.App.Ct. 34, 37 (1987). Furthermore, the current claims are based on the same “transaction, act, or agreement upon which the previous claim was based.” Chestnut Hill Development Corp. v. Otis Elevator Co., 739 F.Supp. 692, 696 (D.Mass. 1990); Ratner v. Rockwood Sprinkler Co., 340 Mass. 773, 776 (1960) (“The statement of a different form or liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong . . .” quoting Mackintosh v. Chambers, 285 Mass. 594, 596-97 (1934)). Therefore, this Court finds all claims based on Tappe’s alleged acts or omissions based in tort, excluding any defamation based claims, were part of the arbitrator’s ruling or were part of the same transaction or agreement as the acts which were the basis of the Arbitration.
[C] Prior and Final Judgment
In order for Tappe to preclude the current claims utilizing the prior arbitration award, they must show that the arbitration was “similar in form and scope to judicial proceedings.” Bailey v. Metropolitan Property and Liability Ins. Co., 24 Mass.App.Ct. 34, 36-37 (1987) citing Restatement (Second) of Judgments §84 (1982), comment c.
TLT’s claims against the City were heard and decided by an AAA Tribunal. (See Decision of Arbitrator and Arbitration Award.) The AAA procedure provides for an adjudication of claims comparable to judicial proceedings.[4] Given AAA procedures, the arbitration between TLT and the City was of such a likeness to judicial proceedings that the arbitration should preclude all of the current counts, excluding defamation, by TLT against Tappe because they have been decided by a court of competent jurisdiction. Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Bailey, 24 Mass.App.Ct. 34 (1987). In conclusion, all claims, excluding defamation based claims which are addressed below, are precluded by the operation of res judicata.[5]
Division of Capital Planning and Operations (“DCPO”)/Defamation Related Claims
In order for a plaintiff to collect damages as a result of a defamation, deceit, or any other cause of action based on “slanderous” conduct, plaintiff must establish, among the required elements of proof, actual damages that result from the defamatoiy statements. See Draghetti v. Chimielewski, 416 Mass. 808 (1994); Kilroy v. Barron, 326 Mass. 464 (1950); Sharratt v. Housing Innovations, Inc., 365 Mass. 141 (1974).
TLT claims Tappe submitted a feelingmark[6] which contained falsehoods, misrepresentations, and defamatory statements. (Kostinden Aff. at par. 26-27.) Since this feelingmark was submitted to the DCPO pursuant to Mass. Gen. L. ch. 149, §44D, it was to be used in determining whether TLT would be able to bid on future public contracts. Mass. Gen. L. ch, 149, §44D.
Tappe’s attorney was informed by TLT’s attorney that the DCPO decided to disregard the evaluation and, therefore, TLT’s DCPO rating was not lowered by the feelingmark. (Hutchison Aff. at par. 2-4.)[7] While TLT might claim that their DCPO rating was adversely affected for a year and a half,[8] there is a marked lack of any evidence at this summary judgment stage that proof of damages from this period can actually be produced, now or at trial. Since a summary judgment movant can satisfy their burden by demonstrating that proof of an element is unlikely to be forthcoming at trial, Tappe has met their burden as to the DCPO/defamation related claims by demonstrating that testimony as to any injury caused by the alleged defamation is not present and will not be forthcoming at trial. Flesner v. Technical Communications, 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991).
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants motion for partial summary judgment and defendants supplemental motion for summary judgment are ALLOWED. Accordingly, this Court orders that all current claims by TLT against Tappe be dismissed.

TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. 1, 4-5 (May 23, 1994) (Rovner, Arb.) (hereinafter “Decision of the Arbitrator”).

TLT Construction Corp. v. City of Beverly, AAA #11-110-00211-93 Am. Arb. Ass’n. Constr. Indus. Arb. Trib. 2, 3 (February 8, 1994) (Rovner, Arb.) (hereinafter “Arbitration Award”).

However, this court finds that the Arbitrator was well within the law in making this finding. See Reynolds Bros., Inc. v. Commonwealth, 412 Mass. 1, 7-8 (1992); Charles I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 503 (1939); March v. Southern new England R.R. Corp., 230 Mass. 483, 495 (1918).

The AAA Commercial Arbitration Rules provide for, “a pre-hearing conference (rule 10), a stenographic record upon *208 request of a party (rule 23), adjournments (rule 26), the administration of oaths to witnesses (rule 27), the presentation of evidence directly (rule 27), the presentation of evidence directly (rule 31) and by affidavit and the filing of documents (rule 32), the acceptance of legal briefs (rule 35), and the reopening of hearings in certain circumstances (rule 26).” Bailey v. Metropolitan Property and Liability Ins. Co., 24 Mass.App.Ct. 34, 38 n.3 (1987); American Arbitration Association Commercial Arbitration Rules, Amended and Effective as of November 1, 1993.

This court finds the case of Associated Construction Co., et al. v. Camp, Dresser & McKee, Inc., 646 F.Supp. 1547 (1986) instructive and persuasive. (Summary judgment granted for engineer in privity with city on basis of res judicata where court found prior arbitration between city and construction company had disposed of all claims including claims not previously raised which were based on the same facts).

A feelingmark is a “standard contractor evaluation” required by The Division of Capital Planning and Operations. Mass. Gen. L. 149, §44D(l)(b)(3). These “evaluations of the applicant’s performance on public and private jobs over the past 5 years" are available to those accepting bids for contracts pursuant to Mass. Gen. L. ch. 149, §44D. Mass. Gen. L. ch. 149, §44D(l)(b)(3).

TLT’s Motion to Strike the Affidavit of Warren Hutchison is denied in so far as it demonstrates the lack of evidence to support TLT’s claim for damages as resulting from Tappe’s submission of the feelingmark to the DCPO. Nardone v. Town of Watertown, et al. Civil Action No. 93-5918, Slip Op. At 4 n.3, 5 Mass. L. Rptr. 530 (Middlesex Sup. Ct. June 21, 1996) (rejecting plaintiffs argument that affidavit of counsel should be stricken because counsel could not testify at trial).

The Feelingmark was submitted January 5, 1995 and Hutchison was informed of DCPO’s quiescence in May of 1996. (Hutchison Aff. at par. 5.)