Connon, Richard F., J.
This matter is before the Court on defendant’s motion for summary judgment pursuant to Mass.R.Civ.P. 56(c). The defendants, William S. Landiy (Landiy), Gregoiy P. Fromm (Fromm), Jonathan T. O’Neill (O’Neill), International Union of Operating Engineers Local #4 (Local 4) and City Crane Corp., d/b/a/ Cape Crane (City Crane), filed this motion for summary judgment alleging that no genuine issue of material fact exists and that defendants are entitled to judgment as a matter of law. For the following reasons, the defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the non-moving party as revealed by the summary judgment record are as follows.
The plaintiff, Baxter, Inc. (Baxter), is a West Yarmouth-based, non-union business which provides heavy equipment, crane and related services for businesses and individuals on Cape Cod. City Crane is an Avon, Massachusetts-based union signatory which provides heavy equipment, crane and related services for businesses and individuals, both on and off Cape Cod. Defendants Landiy, Fromm and O’Neill are equipment operators and former employees of Baxter. The defendants worked on an hourly basis in non-managerial positions for Baxter. They worked without non-compete and non-solicitation agreements with Baxter. Defendant Local 4 is a labor organization that has engaged in organizing activities throughout Eastern Massachusetts, New Hampshire and Maine over the last ten years. Local 4’s goal is to provide union representation to heavy equipment operators working in the construction industiy.
Baxter alleges that, through its Director of Organizing, John Panaro (Panaro), Local 4 orchestrated a plan whereby it caused a union signatory, City Crane, to open a facility on Cape Cod in direct competition with Baxter and further caused Baxter’s employees to leave Baxter and work for City Crane. According to Baxter, Panaro implied through phone calls and a union newsletter, that Baxter Crane could be left debilitated by the union’s actions and City Crane would be in position to fill any resulting void in the Cape Cod market. Defendants Landiy, Fromm and O’Neill were allegedly dissatisfied with their working conditions at Baxter because they were paid less than half of what union operators were paid and received fewer benefits. On March 26, 2001, Panaro organized a “walkout” among the Baxter crane operators and the operators refused to work until Jonathan Baxter met with them and Panaro. Baxter refused to meet with Panaro and refused to organize voluntarily. In response, Local 4 filed a Representation Petition with the National Labor Relations Board (NLRB) which sought a union representation election for the crane operators employed by Baxter. Local 4 won the ensuing election, but on May 16, 2001, Baxter challenged the results and alleged that Local 4 threatened to “blackball” certain employees if they did not support the union effort. The union filed a counterclaim charge against Baxter on May 24, 2001. Through the months of June and July 2001, Local 4 and Baxter negotiated for the mutual withdrawal of their charges before the NLRB and Local 4 agreed to officially withdraw their petition to unionize Baxter.
In June 2001, while still negotiating with Baxter, Panaro allegedly arranged a meeting with City Crane’s owner, William Rizzi (Rizzi) to discuss opening a facility on Cape Cod. After some negotiating, a formal memorandum of understanding was entered into between City Crane and Local 4. According to the memorandum, City Crane was to open up a facility on Cape Cod and in return a number of concessions were granted by the union which would allow Cape Crane to be competitive within the Cape Cod market. In June 2001, a meeting was arranged between Panaro, Rizzi and a number of Baxter’s crane operators. The purpose of the meeting was to discuss the crane operator’s possible employment with City Crane. During the months of June and July of 2001, Landiy, Fromm and O’Neill left Baxter Crane and went to work for City Crane.
Upon opening the new office on Cape Cod, "Rizzi instructed Landiy and Fromm to generate new business by calling numbers out of the local phone book. Baxter alleges that many Baxter customers were solicited by Cape Crane. A regular customer, Karl Anderson of Karl’s Boat Yard, received a fax cover sheet with a price list from Cape Crane on July 24, 2001. In addition, Baxter alleges that other regular customers received faxed price lists and some customers received personal visits from former Baxter employees attempt *221 ing to solicit business for Cape Crane. In one case, Baxter claims that O’Neill attempted to solicit work for Cape Crane while still working at Baxter Crane as he indicated to the Baxter customer that he would be going to work for Rizzi shortly. Baxter alleges that Panaro, using the union’s power and influence, created a union presence on the Cape and exercised its control over Baxter’s employees to staff this competing company. Baxter claims that Panaro sought to destroy Baxter Crane and that he used the union’s money, power and influence to effectuate his plan.
DISCUSSION
Summary judgment shall be granted when there is no genuine dispute as to any material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the party establishes the absence of a triable issue, the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17; Godbout v. Cousens, 396 Mass., 254, 261 (1985). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). On a motion for summary judgment, the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether summary judgment is appropriate. McGuiness v. Cotter, 412 Mass. 617, 620 (1992). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Bailey v. Bellotti, 459 U.S. 970 (1982).
‘To establish intentional interference with contractual or business relations, the plaintiffs must show (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants’ knowledge of the contract or business relationship; (3) the defendants’ intentional interference with the contractual or business relationship for an improper purpose or by improper means; and (4) damages.” Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 397 (1996). In the response to defendant’s Statement of Undisputed Facts, Baxter concedes that it did not have any exclusive contracts, but had regular customers with whom they routinely contracted. Because the tort of intentional interference with contractual relations requires the existence of a contractual relationship with a third party and Baxter can identify no such contractual relationship, the remainder of this decision will focus on whether any of the defendants intentionally interfered with Baxter’s business relations.
To succeed on a claim of intentional interference with advantageous business relations, a plaintiff must show: (1) a business relationship for economic benefit with a third party; (2) the defendants’ knowledge of that relationship; (3) the defendant’s interference with that relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiffs loss of advantage directly resulting from defendants’ improper conduct. Id.; Buster v. Moore, 438 Mass. 635, 652 (2003). “An advantageous relations is a contemplated contract or prospective business relationship.” Id. at n.22; ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779, 787 (1989). In claiming this tort, a plaintiff “may not speculate about future business relationships . . . only a probable future business relationship anticipating a reasonable expectancy of financial benefit suffices." Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 48 (1st Cir. 2002). It is not necessary that the prospective business relation be expected to be reduced to a formal binding contract. Chemwa Country Golf Inc. v. Wnuk, 9 Mass.App.Ct. 506 (1980).
In United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990), the Supreme Judicial Court, in deciding what conduct is improper, adopted the standard expressed by the out-of-state cases cited by the Appeals Court. See United Truck Leasing Corp. v. Geltman, 26 Mass.App.Ct. 847, 852 n.2 (1989), citing Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201, 209-10 (1978) (“In summary, [a claim of tort liability for intentional interference with contractual relations or other economic relations] is made when interference resulting in injury to another is wrongful by some measure beyond the fact of interference itself. Defendant’s liability may arise from improper motives or from the use of improper means ...’’); Blake v. Levy, 191 Conn. 257, 262 (1983) (“the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means”). In Hunneman Real Estate Corp. v. The Norwood Realty, Inc., 54 Mass.App.Ct. 416, 428-29 (2002), the Appeals Court cited the Restatement (Second) of Torts to support the proposition that improper interference is not established if the interfering party’s conduct is directed, at least in part, to advancing his competitive interests, even if he is also motivated by other impulses such as hatred or a desire for revenge. See Restatement (Second) of Torts, §768 (1979). Therefore, even if the defendants were motivated by a desire to destroy *222 Baxter, that alleged motive is not material so long as the defendants were, in part, motivated by competitive interests.
Baxter claims that Local 4, through Panaro, attempted to destroy Baxter’s business and Panaro expressed this desire through phone calls to union members and an article in the union newsletter. Despite the strong language used by Panaro, the desire to establish a union signatory on Cape Cod that eventually leads to increased competition in the marketplace is not improper without more. Baxter also claims that Local 4 caused Baxter’s employees to leave Baxter and work for Cape Crane, however, this conduct is not improper. Advising, urging and inducing an employee to peacefully cease work is a protected activity under 29 U.S.C. §104. Local 4 did not follow Baxter to its worksites, contact any Baxter clients, stage demonstrations, protests or pickets or launch any media campaign against Baxter. No evidence has been proffered regarding any actions by Local 4 that were unlawful or otherwise improper.
Baxter next claims that the former employees, Landry, Fromm and O’Neill, left Baxter with the intent to work for City Crane and to assist City Crane in recruiting Baxter’s customers, however, their actions did not rise to the level of improper interference with prospective business relationships. Landry, Fromm and O’Neill were at-will employees and at-will employees “may properly plan to go into competition with [their] employer and may take active steps to do so while still employed." Augat v. Aegis, Inc., 409 Mass. 165, 172 (1991). In Augat, the Court stated that “if an employer wishes to restrict the post-employment competitive activities of a key employee, it may seek that goal through a non-competition agreement.” Id. The only allegations against the former employees is that they went to work for Ciiy Crane and attempted to solicit business for their new employer. Without a non-compete agreement, there is nothing unlawful about this conduct. There is no evidence that any of the defendants used threats, misrepresented any facts, defamed anyone, or used any other improper means in relation to any prospective contract. In addition, even had their motive been to destroy Baxter, that improper motive does not rise to the level of improper interference as long as the defendants were, at least in part, driven by competitive interests. Clearly, the former employees were, at least in part, driven by competitive interests and were seeking to advance their personal objectives by taking jobs that doubled their salary.
To recover on a claim in intentional interference with a contractual relationship, a plaintiff must show actual damages. Morochnick v. Quigley, 17 Mass.App.Ct. 1035, 1036-36 (1984) (rescript); Sharratt v. Housing Innovations, Inc., 365 Mass. 141, 148 (1974) (“In [interference with advantageous relationship] cases, it is the actual and not the assumed damage which provides the basis for recovery, and which accordingly must be alleged”); Chemwa Country Golf, Inc., 9 Mass.App.Ct. at 510 (damages cannot be speculative or conjectural losses). In the instant case, the plaintiff has shown no actual damages.
The plaintiff has offered no evidence that it was about to enter into or bid on a contract that it lost to City Crane. Baxter has pointed to no regular customers that it lost to City Crane and accordingly cannot establish any amount of actual damages. Baxter claims that City Crane performed a number of jobs for former Baxter customers, however, Baxter cannot establish that it had a “probable future business relationship anticipating a reasonable expectancy of financial benefit” with these former customers. See Singh, 308 F.3d at 48. Baxter concedes that it contracted with its customers on a job-by-job basis and Baxter can point to no client with whom it had an exclusive relationship giving it an ongoing right to perform crane services for that business or individual.
Baxter claims $650,000 in damages, but has offered no basis for this figure. Baxter claims it had experienced steady growth up to the point that Landiy, Fromm and O’Neill left the company and thereafter saw its gross sales decrease; however Baxter fails to establish that the decrease in sales had anything to do with the defendant’s conduct. Baxter has submitted tax returns and financial statements, but these forms are insufficient to show that the defendants caused the alleged damages as opposed to other factors, such as increased competition in the Cape Cod market, poor market conditions or mismanagement. Baxter has failed to meet its burden of establishing actual damages and the damages claimed are based on nothing but speculation and conjecture.
ORDER
It is therefore ORDERED that defendant’s motion for summary judgment be ALLOWED.